UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| CURTIS TERRELL AND ANGELA TERRELL, | * * * | CIVIL ACTION NO.  18-cv-9411 |
| *Plaintiffs* | * * | |
| VERSUS | * * | SECTION: R(4) |
| JASON ALLGRUNN, MICHAEL BANTA, and JEFFERY HENDERSON, JR., individually and their official capacity as duly sworn officers with DeSoto Parish Sheriff's Office, JAYSON RICHARDSON, in his official capacity as Sheriff of DeSoto Parish only, and ABC INSURANCE COMPANIES 1-10. | * * * * * * * * | JURY TRIAL DEMANDED |
| *Defendants* | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | * | |

COMPLAINT

NOW INTO COURT, by and through undersigned counsel, comes Curtis Terrell and Angela Terrell, ("Plaintiffs") who respectfully represent as follows:

INTRODUCTION

1.      Curtis Terrell was emotionally distraught and contemplating suicide when his wife, Angel Terrell, sought medical treatment and called 911 seeking paramedics. Unfortunately, the first responder on the scene was not medical assistance, it was Officer Jason Allgrunn. Instead of offering assistance, without any cause to believe Mr. Terrell was armed or had committed a crime, he detained and pat down Mr. Terrell. Even though Mr. Terrell did not resist, Officer Allgrunn slammed Mr. Terrell on his police car, threw him to the ground, and pinned him down while handcuffing him. When Mrs. Terrell tried to record his misconduct, and call 911 to ask for more help, Office Allgrunn immediately retaliated against her for engaging in First Amendment-

protected activity. He arrested her, and used force to do so, grabbing her by the hair and throwing her into his car. When Officers Henderson and Banta arrived on the scene, they did nothing to stop Officer Allgrunn, and instead, helped him to contain to detain the Terrells. Officer Allgrunn released Mrs. Terrell before leaving the scene, but threatened her as he did so. All three officers took Mr. Terrell to the hospital for his injuries, and then, he was booked and processed, spending five more days in jail before the District Attorney dismissed the charges against him. Mr. Terrell lost his job while incarcerated, and both Mr. and Mrs. Terrell have suffered emotional injuries as a result of the officers' blatant violation of their constitutional rights. Officer Allgrunn's misconduct was not an isolated incident, he is being prosecuted for malfeasance in office for his on the job assault of Mr. Terrel, and another individual a year earlier. Sheriff Jayson Richardson has failed to provide the necessary discipline, or training, to prevent the repeated assault of DeSoto Parish residents by his own employees.

### JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the laws of the State of Louisiana.

3.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiffs' Section 1983 causes of action arises under the Constitution, laws, or treaties of the United States; and 28 U.S.C. § 1343, because Plaintiffs seek to redress the deprivation, under color of State law, of a right secured by the Constitution of the United States.

4.      This Court's supplemental jurisdiction is also invoked pursuant to 28 U.S.C. § 1367 as to all claims arising under Louisiana state law, including but not limited to Article 2315 of the Louisiana Civil Code.

5.      Venue is proper in this Court under 28 U.S.C. § 1391 because the defendants reside or, at the time the events set forth herein, resided  within  this  judicial  district,  and  a

substantial part of the events or omissions giving rise to Plaintiffs' claims arrested herein occurred within this judicial district.

## PARTIES

6.     Plaintiff CURTIS TERRELL is a citizen of the United States of the full age of majority and a resident of the Parish of DeSoto, State of Louisiana.

7.     Plaintiff ANGELA TERRELL is a citizen of the United States of the full age of majority and a resident of the Parish of DeSoto, State of Louisiana.

8.     Made Defendants herein are:

a.   JASON ALLGRUNN (hereinafter "Officer Allgrunn" or "Allgrunn"), a person who upon information and belief is of the full age of majority and a resident of the Parish of DeSoto, State of Louisiana. At all times pertinent herein, Allgrunn was employed as a law enforcement officer with the DeSoto Parish Sheriff's Office and acting under the color of law and within the course and scope of such employment. He is being sued in his individual capacity and his official capacity as an officer of the DeSoto Parish Sheriff's Office.

b.   MICHAEL BANTA (hereinafter "Officer Banta" or "Banta"), a person who upon information and belief is of the full age of majority and a resident of the Parish of DeSoto, State of Louisiana. At all times pertinent herein, Banta was employed as a law enforcement officer with the DeSoto Parish Sheriff's Office and acting under the color of law and within the course and scope of such employment. He is being sued in his individual capacity and his official capacity as an officer of the DeSoto Parish Sheriff's Office.

c.   JEFFERY HENDERSON, JR. (hereinafter "Officer Henderson" or "Henderson"), a person who upon information and belief is of the full age of majority and a resident of the Parish of DeSoto, State of Louisiana. At all times pertinent herein, Henderson was employed as a law enforcement officer with the DeSoto Parish Sheriff's Office and acting under the color of law and within the course and scope of such employment. He is being sued in his individual capacity and his official capacity as an officer of the DeSoto Parish Sheriff's Office.

d.   JAYSON RICHARDSON (hereinafter "Sheriff Richardson"), in his official capacity as the current duly elected Sheriff of DeSoto Parish, State of Louisiana, and the decision-maker for the DeSoto Parish Sheriff's Office. Upon information and belief, Sheriff Richardson is a person of the full age of majority and a resident of the Parish of DeSoto, State of Louisiana.

    e.  ABC INSURANCE COMPANIES 1-10, entities not yet known to Plaintiffs who may have issued, and/or currently have in effect, insurance policies which cover the unconstitutional conduct of one or more of the named Defendants and obligate Defendants ABC INSURANCE COMPANIES 1-10, jointly and/or severally, to pay on behalf of or to indemnify one or more of the named Defendants any sums the insureds may become obligated to pay Plaintiffs.

## FACTS

9.  At all times pertinent herein, Plaintiffs Curtis Terrell and Angela Terrell (hereinafter sometimes referred to as "Mr. Terrell" and "Mrs. Terrell", respectively) were married to each other and resided at 161 Pine Street, Mansfield, Louisiana.

10.  On the evening of August 11, 2019, Mr. Terrell expressed to Mrs. Terrell that he wanted to commit suicide and stated that he had taken three bottles of pills. Fearing that her husband was going to die, Mrs. Terrell called 911 to request immediate medical assistance.

11.  During her 911 call, Mrs. Terrell reported that her husband, Curtis Terrell, had overdosed on pain medication and requested immediate emergency medical assistance at their residence at 161 Pine Street.

12.  Instead of medical assistance, the first person to respond to Mrs. Terrell's call was Officer Allgrunn of the DeSoto Parish Sheriff's Office (hereinafter "DPSO"), who arrived at Mr. and Mrs. Terrell's residence at approximately 9:58 PM.

13.  Officer Allgrunn's camera on the dashboard of his police vehicle was recording throughout his interactions with Mr. and Mrs. Terrell.

14.  At the time of Officer Allgrunn's arrival, Mr. Terrell was standing on the side of the road and talking to his daughter on the phone.

15.  Officer Allgrunn asked Mr. Terrell if he was alright, and Mr. Terrell responded, "Yes, sir."

16.     Mr. Terrell turned around and started to walk back towards his house. Officer Allgrunn then accused Mr. Terrell of "running up and down the road" and ordered him to "come over here."

17.     Officer Allgrunn ordered Mr. Terrell to approach his police vehicle with the intent of patting him down for weapons. Officer Allgrunn did not have a warrant, nor did he have knowledge of any facts or circumstances that would support a reasonable suspicion that Mr. Terrell had committed a criminal offense, was armed, and/or posed a threat to the safety of Officer Allgrunn or anyone else.

18.     When Mr. Terrell did not immediately turn around, Officer Allgrunn approached him and demanded, "Walk to the front of my vehicle, and I'm not going to tell you again." Mr. Terrell complied, but when he asked why he was being detained, Officer Allgrunn merely responded, "Because I said." At that point it was clear: Officer Allgrunn was detaining Mr. Terrell, and he was not free to leave. In fact, when Mr. Terrell's daughter called him back seconds later, Officer Allgrunn ordered him to hang up and threatened, "You think I'm playing games with you?"

19.     Mr. Terrell approached the car as requested, with Officer Allgrunn following directly behind him. Even though Officer Allgrunn had no warrant or reason to search him, Mr. Terrell remained compliant the entire time, and at no point did he struggle, fight, threaten or resist Officer Allgrunn verbally or physically, or give Officer Allgrunn any objectively reasonable basis to use force.

20.     Despite Mr. Terrell's compliance with his orders, Officer Allgrunn became physically violent towards Mr. Terrell just seconds later. Notably, this occurred less than two minutes after Officer Allgrunn's arrival on the scene.

21.     After bringing Mr. Terrell to his vehicle, Officer Allgrunn grabbed the back of Mr. Terrell's neck and shoved him down onto the vehicle's hood, slamming his face and chest into the car. While Mr. Terrell was pressed against the car, Officer Allgrunn proceeded to conduct a warrantless "pat-down" search of Mr. Terrell's person. Officer Allgrunn found nothing. Nonetheless, he ordered Mr. Terrell to raise his arms so that he could continue the unconstitutional pat-down search, claiming that he still "needed to make sure [Mr. Terrell] didn't have any weapons on [him]" even though there were no circumstances which suggested he was armed or dangerous. In fact, Officer Allgrunn's subsequent Incident Report specifically admits that Mr. Terrell was "unarmed" at all pertinent times.

22.     Immediately after Mr. Terrell raised his arms to comply with Officer Allgrunn's request, Officer Allgrunn used his full body to forcibly tackle Mr. Terrell to the ground and then kept him pinned down. The dashboard camera footage from the arrest shows that Officer Allgrunn did not attempt to handcuff Mr. Terrell before forcefully tackling him. Nonetheless, Officer Allgrunn would later claim this use of force was necessary because Mr. Terrell "continued to resist" arrest, as described in more detail below.

23.      Fearing for her husband's safety, Angela Terrell – who had maintained her distance as she watched Officer Allgrunn's terrifying misconduct – had tried recording Officer Allgrunn's assault on her cell phone and tried calling 911 to request additional assistance and report Officer Allgrunn's misconduct.

24.     When Mr. Terrell was pushed to the ground, Ms. Terrell asked Officer Allgrunn why the ambulance that she initially called for had not arrived at their residence yet. Rather than answering Mrs. Terrell, Officer Allgrunn violently punched Mr. Terrell, who was still lying on the

ground, in the head four times. Officer Allgrunn then ordered Mrs. Terrell to "back up" and stated he was arresting her for "misuse of 911."

25.     Officer Allgrunn had no reasonable cause to believe that Mrs. Terrell had communicated any false or misleading information to 911 during her initial call requesting emergency medical assistance for Mr. Terrell or at any other time.

26.     By this point, Mr. Terrell was visibly and severely injured, and the footage from Officer Allgrunn's dashboard camera shows that he was bleeding profusely and was barely able to stand on his own.

27.     Mr. Terrell later noted that he feared for his life as Officer Allgrunn continued to violently beat him while he was lying on the ground. After Officer Allgrunn punched him repeatedly in the head, Mr. Terrell was still pinned to the ground, unable to do more than lift his head. Mr. Terrell then tried to bite Officer Allgrunn's boot in an attempt to make him stop beating him. Officer Allgrunn responded by punching Mr. Terrell in the face.

28.     Mrs. Terrell asked Officer Allgrunn why he kept beating Mr. Terrell, who had not resisted him at any point. Officer Allgrunn ordered Mrs. Terrell to "stay right there" because she "was going to jail too." He then commanded Mr. Terrell to "stand up." When Mr. Terrell stood up, he stated, "You're going to kill me…I'm already dead," and Officer Allgrunn shoved him back to the ground.

29.      When Mrs. Terrell tried to call 911 yet again, Officer Allgrunn stated, "You're interfering right now, so I suggest you be quiet." He then told Mrs. Terrell that the ambulance she had called for would not come "unless we get [Mr. Terrell] under control."

30.     When Mrs. Terrell continued to ask for medical help for her husband, Officer Allgrunn accused her of "interfering with an arrest" and asked for her identification. He then told her that she had "caused enough problems" and would be "going to jail regardless."

31.     At approximately 10:05 PM, seven minutes after the initial call to 911, Emergency Medical Service officers arrived at Mr. and Mrs. Terrell's residence.

32.     Mr. Terrell told an EMS officer that his lip was bleeding from when Officer Allgrunn "shoved his face in the ground." Officer Allgrunn retorted to Mr. Terrell: "That's when I punched you."

33.     As he was being examined by medics, Mr. Terrell asked his wife if she had recorded the arrest on her phone. Mrs. Terrell responded, "No, because [Officer Allgrunn] said that was interfering." Officer Allgrunn responded that he was going to charge Mrs. Terrell with interfering with an arrest.

34.     Officer Allgrunn subsequently informed Mrs. Terrell that she was under arrest.

35.     Although Mrs. Terrell did not resist and remained compliant, Officer Allgrunn roughly grabbed her by the back of her neck and the bun on her head, pulling her by the hair, and pushed her into the back of his vehicle.

36.     Once Mrs. Terrell was in the vehicle, Officer Allgrunn put her in a headlock, and told her to give him her phone and Mr. Terrell's phone. Mrs. Terrell complied and handed over the phones.

37.     Officer Allgrunn then informed the EMS officers that Mr. and Mrs. Terrell "are both going to jail."

38.     While Mrs. Terrell was detained in the back of Officer Allgrunn's car, Officer Henderson and Officer Banta arrived at Mr. and Mrs. Terrell's residence.

8

39.     Mr. Terrell pled with Officers Henderson and Banta, explaining that he was "slammed to the ground" by Officer Allgrunn. In response, Officer Allgrunn laughed and confirmed, "That is true."

40.     Officer Allgrunn did not release Mrs. Terrell until the EMS officers had placed Mr. Terrell on a stretcher and were ready to move him into the ambulance. As he released Mrs. Terrell from his vehicle, he threatened her: "Don't say a word when you go in your house."

41.     When asked why Mrs. Terrell was under arrest in his vehicle, Officer Allgrunn immediately tried to cover up his violation of her constitutional rights, falsely claiming that Mrs. Terrell had "refus[ed] to get into the vehicle." Officer Allgrunn also told Defendants Banta and Henderson that Mrs. Terrell was "temporarily detained because she wouldn't stop interfering." His statements are contradicted by the video from his dashboard camera, which shows Mrs. Terrell maintaining her distance throughout the events of the evening and complying during her unconstitutional arrest.

42.     After arriving at the scene, Officer Henderson and Officer Banta continued to detain both Plaintiffs, resulting in Mrs. Terrell being kept in Officer Allgrunn's custody for 10 to 15 minutes after they arrived at the scene, and Mr. Terrell not being released from DPSO's custody until five days after his arrest.

43.     Defendants Allgrunn, Banta, and Henderson accompanied Mr. Terrell to the hospital to receive treatment stemming from the injuries inflicted by Defendant Allgrunn's violent beating.

44.     The dashcam footage continued to run after Officer Allgrunn entered the hospital with Mr. Terrell, and includes the audio recording of the microphone audio attached to Mr. Allgrunn.

45.     Officer Allgrunn's dashboard camera continued to record his conversations while he was inside the hospital.

46.     At one point while inside the hospital, Officer Allgrunn stated: "[f]or the past 12 1/2 years, I've been the bad cop," and "[i]f they wanted me to punch him and knock out his teeth, they did a good job of that!"

47.     Defendants Banta and/or Henderson expressed their belief that there were no possible felony charges as to Mr. Terrell, and Defendant Allgrunn protested: "You do have felony charges. Resisting with force[.]"

48.     Soon after, Officer Allgrunn turned off his microphone to destroy future evidence of further comments.

49.     Upon information and belief, DPSO policy requires officers to keep both cameras and microphones operational while performing their duties.

50.     At the hospital, the physicians noted a lower lip laceration and that Officer Allgrunn was still at his bedside.

51.     Upon returning to DPSO, Mr. Terrell was placed in a cell.

52.     Officer Allgrunn filled out an Arrest Report at 3:40 AM on August 12, 2019. As he did, Officer Allgrunn swore before a notary as to the circumstances leading up to the arrest and battery of Mr. and Mrs. Terrell. Officer Allgrunn attempted to cover up his misconduct by lying in the report, stating that he ordered Mr. Terrell to "step in front of [his] unit to be patted down for weapons," but Mr. Terrell "pulled away" and "resisted handcuffing" by "trying to stand up [and] keeping his hands under his body." This account of the arrest is contradicted by the video recording from the dashboard camera, which shows that Mr. Terrell remained compliant throughout the patdown and that Officer Allgrunn did not even attempt to handcuff Mr. Terrell before tackling

10

him to the ground. Furthermore, Officer Allgrunn failed to include any details regarding his repeated use of force against Mr. Terrell and wrongful arrest of Mrs. Terrell in his Arrest Report.

53.    The subsequent Incident Report authored by Officer Allgrunn on August 12, 2019, is filled with statements that are contradicted by the dashboard camera video of the events and his own Arrest Report. In the Incident Report, Officer Allgrunn again claimed to have "advised [Mr. Terrell] to walk to the front of my unit so I could make sure that he was not armed." This time, however, Officer Allgrunn stated that Mr. Terrell "refused, stating that he has done nothing wrong." Officer Allgrunn also claimed that he "tr[ied] to detain [Mr. Terrell] due to his aggressive nature" but "had to place him on the ground to place him in handcuffs" and "delivered some closed fist strikes to gain compliance." The dashboard camera video of the arrest clearly shows that Mr. Terrell was not being aggressive, nor did he resist Officer Allgrunn; in fact, Mr. Terrell remained compliant with Officer Allgrunn. The video also exposes the same inconsistency as the Arrest Report: even though Officer Allgrunn claimed to be preparing to conduct a pat-down search when Mr. Terrell approached the vehicle, he was already trying to handcuff and detain Mr. Terrell at that time. Officer Allgrunn failed to mention his most violent attacks on Mr. Terrell in the Incident Report, failing to note that he threw Mr. Terrell onto the car, delivered violent blows directly to Mr. Terrell's head causing him to bleed, or caused the "busted lip" referenced therein.

54.    In the Incident Report, Officer Allgrunn accused Mrs. Terrell of "calling me names," stating that "she did not want the police" involved, and "videotaping me on her phone" during his "struggle with Curtis [Terrell]." He also alleged that Mrs. Terrell "refused to step back" and "call[ed] … 911 to make a complaint." He claimed he "temporarily detained" Mrs. Terrell for "interfering in Curtis arrest [and] placed her in my unit where she refused to sit in the back." He failed to mention that he grabbed her by the hair and neck to force her into the car, that he

handcuffed her, or that he seized her cell phone from her and threatened her to remain quiet when she returned home. As noted above, none of the details regarding Mrs. Terrell's arrest and detainment were included in Officer Allgrunn's previous Arrest Report.

55.     On August 12, 2019, at 3:48 AM, Mr. Terrell was booked by DeSoto Parish Sheriff's Officer Taylor Caldwell for Resisting by Force and Disturbing the Peace by Noise.

56.     DPSO continued to detain Mr. Terrell, despite having no probable cause to believe that he committed a crime or participated in any criminal conduct.

57.     On August 13, 2019, District Judge Amy Burford McCartney set the amount of Mr. Terrell's bail at $10,500. As an additional special condition of bond, Judge McCarthey ordered Mr. Terrell to "make an appointment to undergo an evaluation for substance abuse treatment with the Shreveport Behavioral Health Clinic … within seven (7) days of his release from the DeSoto Parish Detention Center."

58.     Just four days after his arrest, on August 16, 2019, the District Attorney of the 42nd Judicial District (hereinafter "the DA") determined that there was no probable cause to believe that Mr. Terrell had committed a crime. The DA informed Mr. Terrell that it had refused the charges against him. Mr. Terrell was finally released from custody later that day without having to post bail.

59.     Even after receiving notice that the DA had refused the charges against Mr. Terrell, DPSO failed to investigate any misconduct by Defendant Allgrunn.

60.     As a result of his five days of incarceration, Mr. Terrell lost his job with the Village of Converse.

61.     On August 28, 2019, Officer Allgrunn was indicted by the 42nd Judicial District Court for Malfeasance in Office by a grand jury for on August 11, 2019, "being a public officer

and employee, to-wit a commissioned sheriff's deputy with the Desoto Parish Sheriff's Office, intentionally performed his duty in an unlawful manner, to-wit, he committed a simple battery upon Curtis Terrell without being authorized by law to commit the battery." Further, Officer Allgrunn was indicted for an additional count of malfeasance in office for committing a battery on Tony Fuller on October 7, 2018.

62.    Despite the charges and prosecution against Officer Allgrunn, DPSO failed to investigate Officer Allgrunn's conduct in the performance of his official duties. Nor were Defendants Henderson or Banta investigated. None of the Defendants were disciplined. No Defendants were given additional supervision or training.

63.    DPSO and Defendant Allgrunn have a well-documented history of civil rights, including DPSO officers submitting fraudulent timesheets for hours not worked in 2016 and 2017, DPSO officers unlawful arrest and seizure, malicious prosecution, false imprisonment, and use of excessive force and assault and battery after beating and having K-9 dogs tear apart Mr. Fisk's leg (*Christopher Fisk v. Richardson et al*, Case No. 20-cv-00499, Western District of Louisiana). Another DPSO deputy, Officer Procell was instructed by Sheriff Richardson to release a female he was bringing to a detention center, and instead, continued to detain the woman, did not tell her she was to be released, and then the woman told "Procell she would do anything to keep from going to jail, . . . [and] Procell turned off the camera in his patrol unit and 'coerced' the female to perform a sexual act in exchange for leniency."

64.    Defendant Richardson also has prior misconduct including signing and submitting "deputies submitted erroneous timesheets and accepted pay for hours not worked," as part of Local Agency Compensated Enforcement (LACE) details. The DPSO charged the DeSoto Parish District Attorneys (DPDA) Office for time worked, by the hour for working on LACE details. Based off

13

of records reviewed and interviews with deputies, the LLA determined that "DPSO records show that 23 deputies claimed 335 hours for time when they were not logged into a digiTICKET device, resulting in a possible overpayment of $15,075 from January 1, 2017, to June 2, 2017. Of the 23 deputies, we found seven deputies received more than $1,000 each in compensation for hours they were not logged in to the digiTICKET device during our audit, totaling $11,385 or 253 hours." Several deputies informed the LLA that they were paid for hours they were at home, not working, and that then Captain, Jayson Richardson, trained them to falsify timeslips by "claiming one hour per citation written without regard to hours actually worked." Defendant Richardson then signed off on these fraudulent hours requesting, per hour, from the DPDA. Sheriff Richardson prevented the Louisiana Legislative Auditor ("LLA") from Obtaining documents, including his own personnel file, into this matter which prevented them from completing their investigation. Further, "DPSO billed by the hour for the use of its patrol units for LACE details, DPSO may have overbilled the DA for that same period." The LLA concluded that based on its review the deputies may have engaged in payroll fraud. Theft, filing false public records, misappropriated funds, and committed malfeasance in office. DeSoto Parish Sheriff's Office, Local Agency Compensated Enforcement Details, Louisiana Legislative Auditor, Investigative Audit (Feb. 20, 2019).

65.     On January 22, 2019, DPSO Deputies Coleman and Bryant threw Jason Chelette to the floor and arrested him causing him injuries. This incident was recorded. Suit was filed in *Jason Aaron Chelette v. DeSoto Parish Sheriff's Office et al*, 35th Judicial District, Docket No. 26478, for intentionally injuries by the officers and DPSO to Mr. Chellete, and after Defendants failed to Answer, preliminary default was entered by the Court on May 19, 2020.

66.     In March 2019, Deputy Bates, another DPSO officer, grabbed a man by the ponytail and threw him head over heels to the ground, despite the fact that the man was not resisting. The

incident was recorded. Three other DPSO deputies stood by and watched the assault without intervening or offering assistance. Sheriff Richardson did not conduct any internal investigation into the encounter, or discipline Deputy Bates and the other officers present in any way.

67.     DPSO deputies also assaulted a man in March 2019 despite having no need to use excessive force.

68.     On September 27, 2019, Javaria Poynce, a deputy in the DPSO detention center assaulted a detained man rendering him nearly unconscious, unable to speak, and with a swollen eye and face. Another officer saw the injuries to the man, and despite his requests for medical assistance, provided none. That interaction was recorded. Mr. Poynce was not disciplined, and instead, resigned.

69.     Defendant Allgrunn in particular has a history of abuse in his role as a DPSO Sheriff. He is currently being prosecuted for malfeasance in office for assaulting Mr. Terrell and for assaulting another individual, Tony Fuller, on October 7, 2018. Defendant Allgrunn asked Mr. Fuller to ask a minor he was driving with to come out of the nearby store, and when Mr. Fuller said he would come out after finishing shopping, Defendant Allgrunn assaulted Mr. Fuller. Defendant Allgrunn grabbed Mr. Fuller by the neck, threw him to the ground, and punched him in the face and head. He then proceeded to beat him and as he yelled that he would "fuck him up" as Mr. Fuller repeatedly cried, "I am not resisting, sir."  This incident was recorded. His assault of Mr. Fuller also occurred while performing his official duties as a police officer. Defendant Allgrunn did not have probable cause to believe Mr. Fuller committed a crime, did not believe he was armed or dangerous, and did not experience any resistance from Mr. Fuller. Defendant Allgrunn and the DPSO then arrested Mr. Fuller and charged him with resisting arrest. Those charges were later dropped. Suit was filed in Tony Fuller v. Jayson Richardson, DeSoto Parish

Sheriff Department, and Jayson Allgrunn, Case No. 80864, 42nd Judicial Court, DeSoto Parish, Louisiana.

70.     Despite the ongoing prosecution, Sheriff Richardson and DPSO have not disciplined Defendant Allgrunn, and instead, merely placed him on paid administrative leave since August 2019.

71.     Defendant Allgrunn also assaulted Lachristion Williams, who was 16 weeks pregnant, in DeSoto Parish while on duty on March 24, 2019. After Mrs. Williams reached for her sister, to help her get out of an unruly crowd, Defendant Allgrunn threw Ms. Williams onto the ground onto her pregnant stomach, and pulled out his taser. On lookers yelled at Defendant Allgrunn that Ms. Williams was pregnant and Defendant Allgrunn responded, "I don't care." He then threatened to tase her, and allowed Ms. Williams to stand up but then followed her with the taser to her car. Ms. Williams, her sister, and several other onlookers all filed complaints with the DPSO regarding Defendant Allgrunn's conduct, but DPSO refused to conduct an investigation. Later, when Ms. Williams requested a copy of her own statement, DPSO claimed no documents related to the complaints existed.

72.     Defendant Allgrunn was also publicly vocal of his support for officers, who like him, engaged in the assault and battery of individuals in the performance of their job duties. He posted graphic videos and support for them on his social media. He was not disciplined or investigated for doing so.

73.     Defendant Richardson is the final policymaker for the DeSoto Parish Sheriff's Office. Defendant Richardson is responsible for developing and approving procedures and policies and has the final say on all day to day operations for the DSPO. As a result, Defendant Richardson

16

was responsible for the hiring, retention, and training of Defendants Allgrunn, Banta, and Henderson.

74.     Defendant Richardson has allowed these Defendants to repeatedly engage in crimes of violence against individuals in DeSoto Parish without additional training or supervision, and without discipline for misconduct. As a result, he has failed to prevent repeated reoccurrences of this behavior.

75.     Further, Defendant Richardson was aware of the unconstitutional customs or practices of detaining individuals without reasonable suspicion or probable cause to believe that they were engaged in any criminal activity. Again, Defendant Richardson provided no training, discipline, or supervision to stop these constitutional violations, and in fact, continued to receive federal grants and spend taxpayer dollars to pay officers to engage in this misconduct. Defendant Richardson, therefore, created an unconstitutional pattern, practice, and custom in place at DPSO.

76.     Plaintiffs have suffered mental and psychological stress as a result of being beaten, threatened, and detained.

77.     As a direct and proximate result of Defendants' acts, Plaintiffs suffered damages and injuries for which they are he is entitled to compensatory damages in an amount to be determined at trial.

## CAUSES OF ACTION

### COUNT 1:
**Unlawful Search and Seizures in Violation of the Fourth Amendment and Fourteenth Amendment of the United States Constitution**
**42 U.S.C. § 1983**
*(Against Defendants Allgrunn, Henderson, and Banta)*

78.     Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

17

79.     At all times relevant hereto, Defendants Allgrunn, Henderson, and Banta were acting under the color of law and pursuant to the policy, custom, and usage of the DeSoto Parish Sheriff's Office.

80.     The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

81.     It is well-established that a patdown search by a law enforcement officer violates an individual's Fourth and Fourteenth Amendments when the search "was not supported by a reasonable belief that [the individual] was armed and presently dangerous." *Ybarra v. Illinois*, 444 U.S. 85, 93 (1979); *see also Adams v. Williams*, 407 U.S. 143, 146 (1972); *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

82.     Through the actions described above and herein, Defendant Allgrunn violated Plaintiff Curtis Terrell's Fourth Amendment right to be free of unreasonable and unlawful searches by conducting a warrantless patdown search without consent, probable cause, or exigent circumstances, and without any grounds to reasonably believe that Mr. Terrell was armed and dangerous.

83.     It is also well-established that a warrantless arrest by a law enforcement officer may only be reasonable under the Fourth Amendment "where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Ramirez*, 145 F.3d 345, 352 (5th Cir. 1998).

84.     Through the actions described above and herein, Defendant Allgrunn violated Plaintiff Curtis Terrell and Plaintiff Angela Terrell's Fourth Amendment right to be free from unreasonable arrest when he arrested and detained both of them without knowledge of any facts or circumstances sufficient to support a conclusion that either Plaintiff had committed or was committing a criminal offense.

85.     Defendants Henderson and Banta contributed to the unlawful arrest and detention of both Plaintiffs because they did not have probable cause to believe that Defendant Allgrunn reasonably arrested either Plaintiff for any crime, nor did they have any reason to continue to detain both Plaintiffs after Officer Allgrunn arrested them without probable cause.

86.     Defendants Allgrunn, Henderson, and Banta all contributed to the arrest, continued detention, filing of criminal charges, and initiation of the legal process against Plaintiff Curtis Terrell, which resulted in him being detained without probable cause for five days. These actions resulted in pretrial detention unsupported by probable cause in violation of Mr. Terrell's constitutional rights.

87.     The law is clearly established that an unconstitutional seizure of property occurs when an officer unreasonably and meaningfully interferes "with an individual's possessory interests in that property without justification." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984); *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

88.     Through the actions described above, Defendants Allgrunn, Banta, and Henderson violated Plaintiff Curtis Terrell and Plaintiff Angela Terrell's Fourth Amendment rights by seizing their cell phones and other personal property without justification.

89.     Defendants were acting in their capacities as officers of the DeSoto Parish Sheriff's Office and were required to obey the laws of the United States, including relevant laws under the

19

Fourth Amendment, when Defendants engaged in these actions willfully and knowingly, acting with deliberate indifference to Plaintiffs' Fourth Amendment Rights.

90.     Plaintiffs' constitutional right to be free from illegal search and seizure is clearly established and would have been known to Defendants as law enforcement officers employed by DPSO and Sheriff Richardson.

91.     Because Defendants Allgrunn, Banta, and Henderson were acting under the color of state law when they violated the Plaintiffs' clearly-established constitutional rights, Plaintiffs' claims are actionable under 42 U.S.C. § 1983. Plaintiffs are entitled to recover all damages allowable for violation of 42 U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 U.S.C. § 1988.

92.     As a direct and proximate result of the Defendants' actions, Plaintiffs suffered severe injuries and damages, including those as set forth herein.

**COUNT 2:**
**Excessive Force in Violation of the Due Process Clause of the**
**Fourteenth Amendment**
**42 U.S.C. § 1983**
***(Against Defendant Allgrunn)***

93.     Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

94.     At all times relevant hereto, Defendant Allgrunn was acting under the color of law and pursuant to the policy, custom, and usage of the DeSoto Parish Sheriff's Office.

95.     "The Fourth Amendment right to be free from excessive force during a seizure is clearly established." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). The degree of force a law enforcement officer may constitutionally use during an arrest "depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008).

However, a law enforcement officer "uses excessive force when the officer strikes, punches, or violently slams a suspect who is not resisting arrest." *Darden v. City of Fort Worth*, 880 F.3d 722, 732 (5th Cir. 2018).

96.     As specifically detailed above, Plaintiff Curtis Terrell and Plaintiff Angela Terrell were compliant with Defendant Allgrunn's orders, did not resist arrest, and presented no danger to any of the Defendants. Nonetheless, Defendant Allgrunn repeatedly used excessive force against both Plaintiffs, making no effort to temper or limit his use of force. Defendant Allgrunn's knowing and intentional use of excessive force was objectively unreasonable and clearly violated Plaintiffs' Fourteenth Amendment rights.

97.     Both Plaintiffs suffered from significant physical injuries and psychological harm as a result of Defendant Allgrunn's unreasonable use of excessive force. In fact, Mr. Terrell was taken to the emergency room before he was booked in jail because of Defendant Allgrunn's violent beating, and Mrs. Terrell sought out mental health treatment for her emotional injuries. directly causing significant physical injuries and psychological harm to Plaintiffs.

98.     Plaintiffs' right to be free from the use of excessive force by a law enforcement officer is clearly established and would have been known to Defendant Allgrunn as a law enforcement officer employed by DPSO and Sheriff Richardson.

99.     Defendant Allgrunn was acting in his official capacities as an officer of the DeSoto Parish Sheriff's Office, and was required to obey the laws of the United States, including relevant laws under the Fourteenth Amendment, when he engaged in these actions willfully and knowingly, acting with deliberate indifference to Plaintiffs' Fourteenth Amendment Rights.

100.    Because Defendant Allgrunn was acting under the color of state law when he violated the Plaintiffs' clearly-established constitutional rights, Plaintiffs' claims are actionable

under 42 U.S.C. § 1983. Plaintiffs are entitled to recover all damages allowable for violation of 42

U.S.C. § 1983 including compensatory damages, all costs incurred in prosecuting this action, and

attorney's fees pursuant to 42 U.S.C. § 1988.

101.    Defendant Allgrunn's actions were undertaken with malice and with reckless

disregard for Plaintiffs' rights.

102.    As a direct and proximate result of Defendant Allgrunn's actions, Plaintiffs suffered

severe injuries and damages including those as set forth herein.

**COUNT 3:**
**Interference with First Amendment Speech and Retaliation in**
**Violation of the First and Fourteenth Amendments of the**
**United States Constitution**
**42 U.S.C. § 1983**
*(Against Defendants Allgrunn, Henderson, and Banta)*

103.    Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth

herein.

104.    At all times relevant hereto, Defendants Allgrunn, Banta, and Henderson were

acting under the color of law and pursuant to the policy, custom, and usage of the DeSoto Parish

Sheriff's Office.

105.    The First Amendment right of individuals to "verbally [] oppose or challenge police

action without thereby risking arrest is one of the principal characteristics by which we distinguish

a free nation from a police state." *Houston v. Hill*, 482 U.S. 451, 462-63 (1987). The constitutional

right to free speech "protects a significant amount of verbal criticism and challenge directed at

police officers," *Enlow v. Tishomingo Cty.*, 962 F.2d 501, 509 (5th Cir. 1992), including "words

directed at a police officer performing official tasks" by an angry citizen, *see Mesa v. Prejean*, 543

F.3d 264, 273 (5th Cir. 2008), and "the right to record the police," *Turner v. Lieutenant Driver*,

848 F.3d 678, 690 (5th Cir. 2017).

106.    As described above and herein, Plaintiff Curtis Terrell questioned why he needed to approach Defendant Allgrunn's vehicle. Defendant Allgrunn responded by unlawfully searching, violently assaulting, and unconstitutionally arresting Mr. Terrell. Similarly, Plaintiff Angela Terrell attempted to record Defendant Allgrunn on her cell phone and protested directly to Defendant Allgrunn that he was engaging in misconduct. In response, Defendant Allgrunn ordered Mrs. Terrell not to record him, confiscated her cell phone, and arrested her. Plaintiffs' speech and expressive activity were petitions to government officials for redress protected by the First Amendment, and Defendant Allgrunn's official actions clearly deprived Plaintiffs of their constitutional rights.

107.    In addition, the right to free speech under the First Amendment "prohibits not only direct limitations on speech but also adverse government action against an individual because of her exercise of First Amendment freedoms." *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999).

108.    Defendant Allgrunn threatened to criminally charge Plaintiff Angela Terrell for "abuse of 911" when she attempted to call 911 to request medical assistance for Mr. Terrell after Defendant Allgrunn assaulted him. In addition, Defendant Allgrunn commanded Mrs. Terrell to remain silent about the events of the evening after she was finally released from arrest. Defendant Allgrunn's actions were intended to deter and chill Mrs. Terrell's exercise of free speech and thus constituted unconstitutional retaliation against Mrs. Terrell for engaging in First Amendment-protected activity.

109.    Defendants Banta and Henderson were aware that Defendant Allgrunn had restrained Plaintiffs' constitutionally-protected speech by unlawfully detaining them and using excessive force against them. Nonetheless, Defendants Banta and Henderson continued to keep

Mrs. Terrell in police custody for 10 to 15 minutes after they arrived on the scene, and they assisted Defendant Allgrunn in arresting, booking, and holding Mr. Terrell for five more days. As such, Defendant Banta and Defendant Henderson's official actions This further restrained and chilled Plaintiffs' speech.

110.    The right to engage in protected speech without retaliation was clearly established and would have been known to Defendants as law enforcement officers. *Keenan v. Tejeda*, 290 F.3d 252, 261 (5th Cir. 2002).

111.    Defendants were acting in their official capacities as officers of the DeSoto Parish Sheriff's Office, and they were required to obey the laws of the United States, including the constitutional rights guaranteed by the First Amendment, when they engaged in these actions willfully and knowingly, acting with deliberate indifference to Plaintiffs' First Amendment Rights.

112.    As Defendants were acting under the color of state law, Plaintiffs' claims are actionable under 42 U.S.C. § 1983.

113.    Defendants' actions were undertaken with malice and with reckless disregard for Plaintiffs' rights.

114.    As a direct and proximate result of Defendants' actions, Plaintiffs' rights were damaged and chilled, and Plaintiffs suffered severe injuries and damages including those set forth herein.

**COUNT 4:**
**Failure to Intervene**
**42 U.S.C. § 1983**
***(Against all Defendants)***

115.    Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

24

116.    At all times relevant hereto, Defendants Allgrunn, Henderson, Banta, and Richardson were acting under the color of law and pursuant to the policy, custom, and usage of the DeSoto Parish Sheriff's Office.

117.    Bystander liability under 42 U.S.C. § 1983 is applied to law enforcement officers when the officer knows that a fellow officer is violating an individuals' constitutional rights, has a reasonable opportunity to prevent the harm, and chooses not to act.

118.    The aforementioned conduct of Defendant Allgrunn was objectively unreasonable, and his actions were undertaken intentionally, willfully, with malice and/or reckless indifference to Plaintiffs' constitutional rights.

119.    As set forth above, Defendant Allgrunn knowingly and intentionally engaged in conduct and actions that constituted excessive force in violation of Plaintiffs' constitutional rights.

120.    During the events described herein, each Defendants Banta and Henderson was aware of and engaged in the constitutional violations but did not intervene to prevent the violation of constitutional rights, even though they had the opportunity and duty to do so when they were physically present.

121.    At no point did Defendants Banta and Henderson intervene, or attempt to intervene, to stop any of the constitutional violations described herein.

122.    The actions of the Defendants were the direct and proximate cause of the injuries to Plaintiffs including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, and legal expense.

123.    As Defendants were acting under the color of state law, Plaintiffs' claims are actionable under 42 U.S.C. § 1983.

25

124.    Defendants actions were undertaken with malice and with reckless disregard for Plaintiffs' rights.

## COUNT 5:
### Monell/Hinojosa and Failure to Train/Supervise
### *(Against Defendant Richardson, and Defendants Henderson, Banta and Allgrunn in their Official Capacities)*

125.    Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

126.    At all times relevant hereto, Defendants Allgrunn, Henderson, Banta, and Richardson were acting under the color of law and pursuant to the policy, custom, and usage of the DeSoto Parish Sheriff's Office.

127.    At all times relevant hereto, Defendants Allgrunn, Henderson, Banta, and Richardson were acting pursuant to an expressly adopted official policy and/or a longstanding practice or custom of the DeSoto Parish Sheriff's Office.

128.    The misconduct described above was caused by the policies, practices, and customs of Defendants, in that their employees and agents regularly stop, search, detain, and use excessive force on individuals without legal justification.

129.    Upon information and belief, DPSO and Defendant Richardson, as DPSO's chief policymaker and supervisor, maintained, *inter alia*, the following unconstitutional customs, practices, and/or policies:

a.   Using excessive force;

b.   Failing to investigate instances of excessive force employed by DPSO officers, including, but not limited to, Officer Allgrunn;

c.   Providing inadequate training regarding how to detain suspects and the proper amount of force appropriate;

d.   Providing inadequate training regarding how to intervene to stop other officers from using excessive force in detaining suspects;

26

e.  Providing inadequate training regarding how to detain mentally ill persons (MIPs) and the proper amount of force appropriate in detaining MIPs;

f.  Employing and retaining individuals, such as Defendants Allgrunn, Banta, and Henderson, who DPSO and Defendant Richardson knew or reasonably should have known had dangerous propensities for abusing authority and for using excessive force on suspects and other citizens;

g.  Inadequately supervising, training, controlling, assigning, and disciplining law enforcement officers and other personnel, including Defendants Allgrunn, Banta, and Henderson, who DPSO and Defendant Henderson knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits; and/or

h.  Maintaining a policy of inaction and an attitude of indifference towards increasing numbers of excessive use of police force, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in excessive use of police force.

130.   The above-described widespread practices, which were so well settled as to constitute the *de facto* policy of Defendants, were allowed to exist because policymakers with authority over there acts exhibited deliberate indifference to the problem, thereby effectively ratifying it.

131.   The policies, practices, and customs set forth above were the driving force behind the numerous constitutional violations in this case that directly and proximately caused Plaintiffs to suffer the grievous and permanent injuries and damages set forth above.

132.   As a direct and proximate result of the Constitutional violations caused by the Defendants in their capacity as DPSO Officers, Plaintiffs suffered physical and psychological injuries, as well as violations of the constitutional rights guaranteed to them by the First, Fourth, and Fourteenth Amendments of the United States Constitution.

133.   As a result of their injuries, Plaintiffs are entitled to recover all damages allowable for constitutional violations in violation of 42 U.S.C. § 1983, including compensatory damages,

special damages, economic damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT 6:
## Violations of the Louisiana Constitution
### *(Against all Defendants)*

134.     Plaintiffs incorporate all preceding paragraphs by reference as if fully set forth herein.

135.     Article One, Section Two of the Louisiana Constitution of 1974 guarantees that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." Further, Article 4, sections A-B guarantees the "right . . . to control, use, enjoy, protect, and dispose of private property" and that "property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation."

136.     Additionally, Section 7 guarantees the freedom of expression and Section 9 the right to "petition government for a redress of grievances."

137.     By reason of the same conduct that violated Plaintiffs' federal constitutional rights, Defendants violated his state constitutional rights.

138.     This conduct resulted in Plaintiffs' physical injuries, as well as the emotional, and pecuniary damages as described above and below.

139.     Defendants continue to engage in this unconstitutional conduct resulting in the deprivation of the constitutional rights of other individuals.

## COUNT 7:
## Intentional and Negligent Infliction of Emotional Distress, and
## Negligence
### *(Against All Defendants)*

140.     Plaintiffs incorporate by reference and re-alleges each allegation contained above as though fully set forth herein.

141.    Defendants' conduct toward Plaintiffs was extreme and outrageous in that they blatantly violated their constitutional rights, threatened Plaintiffs, and physically assaulted them.

142.    Defendants desired to inflict severe emotional distress, or knew that severe emotional distress would be certain or substantially certain to result from their conduct.

143.    Defendants, either directly, or by and through its agents, directly and proximately caused Plaintiffs severe injuries, damages, and losses.

144.    Further, when Defendants used excessive force, engaged in unconstitutional searches and seizures of Plaintiffs, and maliciously prosecuted them, without probable cause or justification, they breached their duty of care with regards to Plaintiffs.

145.    Defendants' actions were the cause-in-fact of Plaintiffs' injuries which included lost wages, severe emotional distress, and physical injuries.

146.    Defendant Sheriff Richardson, as a supervisor, was vicariously liable for the negligence of the other Defendants and independently negligent for failing to adequately train its officers and effectively supervise these deputies.

147.    Defendant Sheriff Richardson was negligent for the lack of supervision during the detention, searches, assault, and threats to Plaintiffs, and the failure to end those constitutional violations earlier. Defendant Sheriff Richardson was also negligent by failing to take any action in response to the pattern of abuses by DeSoto Sheriff's Office deputies, including Defendants Allgrunn, Banta, and Henderson.

148.    Defendants' conduct was extreme and outrageous: Defendants knew that the emotional distress suffered by Plaintiffs was severe, and they desired or acted with recklessness to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct.

29

149.    Defendants' decisions, actions, and conduct set forth above were substantially certain to result in the violations outlined herein.

**COUNT 8:**
**State Law False Imprisonment**
*(Against Defendants Allgrunn, Banta, Henderson, and*
*Richardson)*

150.    The tort of false imprisonment in Louisiana "occur[s] when one arrests and restrains another against his will without a warrant or other statutory authority. Simply stated, it is restraint without color of legal authority." 353 So.2d 969 (La. 1977); *see also Miller v. Desoto Regional Health Sys.*, 128 So.3d 649, 655-56 (La. App. 3 Cir. 2013). This has been distilled into "the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention." *Thomas v. Gulotta* (M.D. La. 2017); *see also Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 690 (La. 2006).

151.    There is no need for the unlawful detention to be an intentional act by Defendants, and evidence of malice is not required. *Fontenot v. Lavergne*, 365 So.2d 1168 (La.App. 3d Cir.1978); *Prisk v. Palazzo*, 95–1475, pp. 4–5 (La.App. 4 Cir. 1/19/96), 668 So.2d 415, 417 ("The civil cause of action for false imprisonment requires proof of restraint without color of legal authority . . . There is no requirement of proving that the confinement be intentional.").

152.    Defendants detained Plaintiffs without their consent at the scene, in a police car, and as to Mr. Terrell, while receiving emergency medical treatment and at DeSoto Parish Jail.

153.    The second element – that the detention be unlawful – is fulfilled as Plaintiffs were arrested without any probable cause to believe they had committed any crimes, and Defendants' continued to detain Plaintiffs' after their arrest without probable cause to believe they committed a crime.

30

**COUNT 9:**
**State Law – False Arrest**
***(Against Defendants Allgrunn, Banta, Henderson, and***
***Richardson)***

154.    Plaintiffs incorporate by reference and re-alleges each and every allegation contained above as though fully set forth herein.

155.    Defendants, individually and together, and jointly and severally, and/or by and through their agents, servants, and employees, maliciously, willfully, deliberately, wantonly, intentionally, violently, negligently, carelessly, and/or recklessly restrained Plaintiff Angela Terrell and Plaintiff Curtis Terrell and restricted their movements by excessive force and the use of mechanical restraints, including handcuff, in violation of their constitutional rights.

156.    Plaintiffs were confined by physical force and physical barrier, and their confinement was complete.

157.    Defendants individually and/or by and through their agents, servants, employees acted without having any reasonable grounds to believe that either Plaintiff had committed any criminal offense, or that it was otherwise legally and morally necessary to restrain Plaintiffs.

158.    As a direct and proximate foreseeable result of their false arrest by Defendants, as set forth above, Plaintiffs suffered injuries, including physical injuries, physical pain and suffering, mental pain and suffering, and emotional distress.

**COUNT 10:**
**State Law - Assault and Battery**
***(Against Defendant Allgrunn)***

159.    Plaintiffs incorporate by reference and re-alleges each and every allegation contained above as though fully set forth herein.

160.    Defendant Allgrunn engaged harmful or offensive contact with Plaintiffs when they grabbed, choked, and pinned Plaintiffs as he pled for air.

31

161.    Defendant Allgrunn's actions were intended to cause the Plaintiffs' to be, among other violent actions, punched, threw, grabbed the hair, pinned down, tackled, and kicked Plaintiffs.

162.    Defendant Allgrunn consciously desired the physical result of these acts and knew that that result is substantially certain to follow their physical attacks on Plaintiffs.

163.    Plaintiffs did not consent to the invasive conduct.

164.    As a result of Defendant Allgrunn's actions, Plaintiffs suffered damages including physical injuries, emotional and pecuniary damages.

**COUNT 11:**
**State Law – Malicious Prosecution**
***(Against Defendants Allgrunn, Banta, Henderson, and***
***Richardson)***

165.    Plaintiffs incorporate by reference and re-alleges each and every allegation contained above as though fully set forth herein.

166.    Under Louisiana law, the elements of a malicious prosecution action are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. *Jones v. Soileau*, 448 So.2d 1268, 1271 (La. 1984).

167.    To fulfill the element of legal causation, the "present defendant" must commence or continue the criminal or civil proceedings against a plaintiff who was the defendant in the original proceeding. *Johnson v. Pearce*, 313 So.2d 812, 816 (La. 1975).

168.    Defendants Allgrunn, Banta, Henderson, and Richardson commenced criminal proceedings against Plaintiff Curtis Terrell without probable cause, and the "chain of causation

32

between th[e] initial report and the ultimate prosecution" was unbroken until the DA refused to prosecute the charges against Mr. Terrell. *James v. Woods*, 899 F.3d 404, 409 (5th Cir. 2018).

169.    Defendants Allgrunn, Banta, Henderson, and Richardson are therefore liable as principal for all torts committed by their agents and employees.

### COUNT 12:
### Respondeat Superior
### *(Against Defendant Richardson)*

170.    Plaintiffs incorporate by reference and re-alleges each and every allegation contained above as though fully set forth herein.

171.    While committing the misconduct alleged in the preceding paragraphs, some Defendants and others were employees, members, and agents of the DeSoto Parish Sheriff's Office and Defendants Sheriff Richardson, and acting within the scope of their employment.

172.    The DeSoto Parish Sheriff's Office and Defendant Sheriff Richardson are therefore liable as principal for all torts committed by their agents and employees.

### COUNT 13:
### Indemnification
### *(Against Defendant Richardson)*

173.    Plaintiffs incorporate by reference and re-alleges each and every allegation contained above as though fully set forth herein.

174.    Louisiana law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable for actions taken in the discharge of their duties that are within the scope of their employment activities.

175.    While committing the misconduct alleged in the preceding paragraphs, some Defendants and others were employees, members, and agents of the DeSoto Parish Sheriff's Office and Defendant Sheriff Richardson and acting within the scope of their employment.

176.    The DeSoto Parish Sheriff's Office, and Defendant Sheriff Richardson, are therefore obligated by Louisiana statute to pay any judgment entered against its employees.

## COUNT 14:
### Direct Action under Louisiana Revised Statute § 22:655
### *(Against Defendant ABC Insurance Companies 1-10)*

177.    Plaintiffs incorporate all proceeding paragraphs by reference as if fully set forth herein.

178.    ABC Insurance Companies 1-10 may have issued and currently have in effect insurance policies, which cover the unconstitutional conduct of one or more of the named defendants and obligate ABC Insurance Companies 1-10, jointly and/or severally, to pay on behalf of or to indemnify one or more of the named defendants any sums the insureds may become obligated to pay Plaintiffs.

179.    Because of their illegal and unconstitutional conduct, defendants are liable to Plaintiffs for all damages and injuries he has suffered as a result. Defendant ABC Insurance Companies 1-10 are contractually obligated to pay these sums on behalf of the insureds or are obligated to indemnify the insureds for these sums.

180.    ABC Insurance Companies 1-10 may be liable to Plaintiffs for any all sums described above up to their policy limits, notwithstanding the fact that their insureds may be able to assert claims of privilege or immunity from liability.

181.    Pursuant to Louisiana Revised Statute § 22:655(B), Plaintiffs bring a direct action against ABC Insurance Companies 1-10 to recover any and all sums they are obligated to pay Plaintiffs on behalf of their insureds or to indemnify their insureds.

## P<small>RAYER FOR</small> R<small>ELIEF</small>

182.    WHEREFORE, Plaintiff Curtis Terrell and Angela Terrell requests that this court enter judgment:

   a.  Declaratory and injunctive relief;

   b.  Judgment against Defendants for Plaintiff's asserted causes of action;

   c.  Award of compensatory damages;

   d.  Award of special damages;

   e.  Award of punitive damages;

   f.  Award costs and attorney's fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, 28 C.F.R. § 35.175, and 29 U.S.C. § 794a(b); and

   g.  Order such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

## DEMAND FOR JURY TRIAL

183.    Plaintiffs demands a jury trial on any causes of action so triable.


Respectfully Submitted:


____/s/ Casey Denson_____
**CASEY ROSE DENSON (LA. BAR. NO. 33363)**
Casey Denson Law, LLC
3436 Magazine Street, Unit #7005
New Orleans, LA 70115
Telephone: (504) 224-0110
Email: cdenson@caseydensonlaw.com


____/s/ Howard E. Conday_____
**HOWARD E. CONDAY (LA. BAR. NO. 35717)**
Law Offices of Howard E Conday Jr, LLC
113 South Dr., Suite #4
Natchitoches, La 71457
Telephone: 318-238-1756
Email: assistant@howardconadaylaw.com