## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

|  |  |
|---|---|
| CURTIS TERRELL AND ANGELA TERRELL, <br><br> *Plaintiffs* <br><br> v. <br><br> JASON ALLGRUNN, MICHAEL BANTA, and JEFFERY HENDERSON, JR., individually and their official capacities as duly sworn officers with DeSoto Parish Sheriff's Office, JAYSON RICHARDSON, in his official capacity as Sheriff of DeSoto Parish only, and OLD REPUBLIC UNION INSURANCE COMPANY, <br><br> *Defendants* | **CIVIL ACTION NO. 5:20-CV-00999** <br><br> **JUDGE ELIZABETH E. FOOTE** <br><br> **MAG. JUDGE MARK HORNSBY** |

---

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iv

I.    INTRODUCTION ................................................................................................. 1

II.   PROCEDURAL HISTORY ................................................................................. 2

III.  STATEMENT OF FACTS ................................................................................... 3

    A.  Within Minutes of Arriving, Defendant Jason Allgrunn Assaulted Plaintiffs. .................... 3

    B.  As Defendant Allgrunn's Misconduct Worsened, Mrs. Terrell Complained and Called for Help. In Response, Defendant Allgrunn Arrested Her and Mr. Terrell. .............................. 4

    C.  Defendant Allgrunn Threatened Mrs. Terrell and Finally Brought Mr. Terrell to the Hospital. .................................................................................................... 8

    D.  Mr. Terrell was Incarcerated at DPCC for Five Days. ..................................... 10

    E.  As a Result of Defendant Allgrunn's Abusive Misconduct, Plaintiffs Suffered Significant Damages. ................................................................................................... 11

F.    Sheriff Jayson Richardson Did Not Discipline Defendants, Even as Defendant Allgrunn was Prosecuted. ............................................................................................ 12

G.    Defendant Allgrunn Repeatedly Assaulted Citizens While Working. .............................. 13

IV.    DISCUSSION ............................................................................................................ 16

A.    Standard for Summary Judgment. .............................................................................. 16

B.    Allgrunn Arrested Mrs. Terrell without a Warrantless and without Probable Cause in Violation of her Fourth Amendment Rights. ................................................................ 18

1.    Defendant Allgrunn Lacked Probable Cause to Arrest Mrs. Terrell. ......................... 18

2.    Defendant Allgrunn was Acting Under Color of Law. .............................................. 23

3.    Defendant Allgrunn is Not Entitled to Qualified Immunity as to Mrs. Terrell's Fourth Amendment Unlawful Arrest Claim. ....................................................................... 23

C.    Defendant Allgrunn Violated the First Amendment. .................................................... 24

1.    Mrs. Terrell Engaged Speech Protected by the United States' Constitution. ............. 24

2.    Defendant Allgrunn Injured Ms. Terrell. ............................................................... 26

3.    Defendant Allgrunn's Arrest and Headlock of Mrs. Terrell was Substantially Motivated her Protected Speech. .......................................................................... 26

4.    Defendant Allgrunn was Acting Under Color of Law. .............................................. 27

5.    Defendant Allgrunn is Not Entitled to Qualified Immunity. ..................................... 27

D.    Defendant Allgrunn used Excessive Force Against Plaintiffs. ........................................ 27

1.    Plaintiffs were Injured by Defendant Allgrunn. ...................................................... 28

2.    Defendant Allgrunn's Use of Force was Objectively Unreasonable. ......................... 29

3.    Defendant Allgrunn was Acting Under Color of Law. .............................................. 32

4.    Defendant Allgrunn Should be Denied Qualified Immunity. .................................... 32

E.    The Official Capacity Defendants are Liable for the First and Fourth Amendment Violations of Both Plaintiffs. ..................................................................................... 33

1.    DPSO's Official Policy Resulted in the Deprivation of Plaintiffs' Rights. .................. 33

2.    DPSO's Failure to Train, Investigate, Supervise and Discipline Officers Resulted in the Violation of Mr. and Mrs. Terrell's rights. ............................................................. 35

3.    Defendant Richardson's Hiring of Defendant Allgrunn was Deliberately Indifferent. . 37

F.    Defendant Allgrunn Committed Assault and Battery Against Mrs. Terrell. .................... 38

G.    Defendant Allgrunn Falsely Arrested and Imprisoned Mrs. Terrell. .............................. 39

H.    Summary Judgment Should be Granted against Defendant Allgrunn for Negligent and Intentional Infliction of Emotional Distress. ............................................................... 40

ii

I.    Defendant Richardson, Allgrunn, Henderson and Banta, in Their Official Capacities, are Liable Under the Doctrine of *Respondeat Superior* for the Tortious Conduct of Defendant Allgrunn. ............................................................................................................ 41

J.    Defendant Old Republic Union Insurance Company is Liable under Louisiana's Direct Action Statute............................................................................................................ 42

K.   Conclusion ....................................................................................................... 42

CERTIFICATE OF SERVICE ............................................................................................. 43

# TABLE OF AUTHORITIES

**Cases**

*Abdullahi v. City of Madison*, 423 F.3d 763 (7th Cir. 2005) ........................................................ 31

*Adams v. Thompson*, 557 F. Supp. 405 (M.D. La. 1983) ........................................................ 21

*Allen v. Cisneros*, 815 F.3d 239 (5th Cir. 2016) ........................................................ 24

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1996) ........................................................ 17

*Bd. of the Cty. Comm'rs v. Brown,* 520 U.S. 397 (1997) ........................................................ 37

*Bellard v. Gautreaux*, 675 F.3d 454 (5th Cir. 2012) ........................................................ 17

*Bennett v. City of Slidell*, 735 F.2d 861 (5th Cir. 1984). ........................................................ 33

*Blackwell v. Barton*, 34 F.3d 298 (5th Cir. 1994) ........................................................ 23

*Bone v. Dunnaway*, 657 F. App'x 258 (5th Cir. 2016) ........................................................ 18, 23

*Brasseaux v. Town of Mamou*, 752 So.2d 815, 820 (La. 2000) ........................................................ 41

*Brigham City v. Stuart*, 547 U.S. 398 (2006) ........................................................ 29

*Brooks v. City of W. Point*, 639 F. App'x (5th Cir. 2016). ........................................................ 23, 24

*Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000). ........................................................ 33

*Brown v. City of Monroe*, 135 So. 3d 792 (La. App. 2 Cir 02/26/14) ........................................................ 40

*Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008) ........................................................ 23, 31

*Calloway v. Abbott*, No. 07-1101, 2008 U.S. Dist. LEXIS 23449 (E.D. La. Mar. 24, 2008) ....... 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................ 16, 17, 21

*Cf. Caniglia v. Strom*, 141 S. Ct. 1596 (2021) ........................................................ 32

*City of, Ohio v. Harris*, 489 U.S. 378 (1989) ........................................................ 33

*Club Retro, L.L.C. v. Hilton*, 568 F.3d 181 (5th Cir. 2009) ........................................................ 18, 23

*Curran v. Aleshire*, 800 F.3d 656 (5th Cir. 2015) ........................................................ 31

*Darden v. City of Fort Worth*, 880 F.3d 722 (5th Cir. 2018)...................................... 29, 32

*Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395 (5th Cir. 2008)....... 16

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) ............................................. passim

*DirectTV, Inc. v. Budden*, 420 F.3d 521 (5th Cir. 2005) ............................................. 17

*Estate of Aguirre v. City of San Antonio*, 995 F.3d 395 (5th Cir. 2021).............................. 28, 30

*Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004) .......................................... 23, 28

*Forsyth v. Barr*, 19 F.3d 1527 (5th Cir 1994.)..................................................... 17

*Gericke v. Begin*, 753 F.3d 1 (1st Cir. 2014) ...................................................... 25

*Goodman v. Harris Cty.*, 571 F.3d 388 (5th Cir. 2009)............................................. 23

*Gorman v. City of Opelousas*, 148 So. 3d 888 (La. 2014)........................................... 42

*Graham v. Connor*, 490 U.S. 386 (1989)) ......................................................... 27

*Gray v. Horton*, 2008 U.S. Dist. LEXIS 4194, 2008 WL 170664 (W.D. La. Jan. 18, 2008)....... 21

*Hartman* v. *Moore*, 547 U. S. 250 (2006)......................................................... 24

*Houston v. Hill*, 482 U.S. 451 (1987). ............................................................ 24

*Jauch v. Choctaw Cty.*, 874 F.3d 425 (5th Cir. 2017) .............................................. 16

*Jauch v. Choctaw Cty.*, 874 F.3d 425 (5th Cir. 2017). ............................................. 33

*King v. Chide*, 974 F.2d 653 (5th Cir. 1992) ...................................................... 17

*Laughlin v. Olszewski*, 102 F.3d 190 (5th Cir. 1996) .............................................. 18, 23

*Lewis* v. *City of New Orleans*, 415 U.S. 130 (1974).............................................. 24

*Little v. Liquid Air Corp.*, 37 F.3d (5th Cir. 1994). ............................................... 16

*Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994)................................................. 23

*Massey v. Wharton*, 477 F. App'x 256 (5th Cir. 2012) ............................................. 23, 27

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ........................ 17

*McCue v. City of Bangor*, 838 F.3d 55 (1st Cir. 2016)................................................. 31

*Mesa v. Prejean*, 543 F.3d 264 (5th Cir. 2008) ........................................................ 25

*Miller v. Keating*, 349 So.2d 265 (La. 1977) ........................................................... 41

*Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) ............................................ 33

*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) ............................................................. 24

*Pearson v. Callahan*, 555 U.S. 223 (2009)). ........................................................... 23

*Perry v. City of Bossier*, No. 17-0583, 2018 U.S. Dist. LEXIS 179421 (W.D. La. Oct. 17, 2018)

................................................................................................................. passim

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) ................................. 33

*Porter v. Epps*, 659 F.3d 440 (5th Cir. 2011). ....................................................... 23

*Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013) ............................................... 31

*Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991). ................................................. 17

*Resendiz v. Miller*, 203 F.3d 902 (5th Cir. 2000) ............................................ 18, 21

*Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122 (5th Cir. 2014)............................... 40

*Schoellmann v. Treuting*, No. 05-2851, 2006 U.S. Dist. LEXIS 104532 (E.D. La. July 26, 2006)

................................................................................................................. 32

*Scott v. Harris*, 550 U.S. 372 (2007) .................................................................... 31

*Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000) .................................. 25

*State v. Daigle,* 701 So.2d 685 (La. App. 3 Cir. 06/11/97). ................................... 21

*State v. Lindsay*, 388 So.2d 781 (La. 1980) .......................................................... 21

*State v. Malveaux,* 852 So. 2d 463 (La. App. 3 Cir 06/12/03)........................... 22, 30

*State v. Manuel,* 946 So. 2d 245 (La. App. 4 Cir. 11/21/06) .................................. 21

*State v. Smith*, 2 So. 3d 1187, 1197 (La. App. 3 Cir 01/21/09) ........................ 22, 30

*Thomas v. Frederick*, 766 F. Supp. 540 (W.D. La. 1991) ............................................................ 40

*Thomas v. Gullotta*, 15-cv-00435, R. Doc. 64 (M.D. La, Jan. 26, 2017) ..................................... 40

*Tolan v. Cotton*, 572 U.S. 650 (2014) ......................................................................................... 27

*Trahan v. City of Scott*, 802 So. 2d 24 (La. App. 3 Cir 03/14/01) ............................................... 40

*Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017) ..................................................................... 24, 25

*Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed.Appx. 306 (5th Cir. 2011) .................................. 17

*United State v. Lawrence*, 276 F.3d 193 (5th Cir. 2001) .............................................................. 17

*United States v. Flowers*, No. 20-60056, 2021 U.S. App. LEXIS 22677 (5th Cir. July 30, 2021).

.................................................................................................................................................... 18

*United States v. Valdiosera-Godinez,* 932 F.2d 1093 (5th Cir.1991) .......................................... 18

*Vetter v. Frosch*, 599 F.2d 630 (5th Cir. 1979) ........................................................................... 17

*Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008) ....................................................................... 31

*White v. Monsanto*, 585 So. 2d 1205 (La. 1991)). ....................................................................... 40

**Statutes**

**Federal**

Fed. R. Civ. P. 56(a) .................................................................................................................... 16

Fed. R. Civ. P. 56(c) .................................................................................................................... 17

**State**

LA. CIV. CODE ANN. ART. 2320 (1997) .......................................................................................... 41

La. Rev. Stat. § 14.108(A) ............................................................................................................ 21

La. Rev. Stat. § 22:1269 (B)(1)……………………………………………………………....42

# I.    INTRODUCTION

On the evening of August 11, 2019, Angela Terrell was terrified that her husband, Curtis Terrell, was going to take his own life, and called 911 and requested emergency medical assistance. The first responder on the scene was Defendant Officer Jason Allgrunn. Defendant Allgrunn immediately detained and pat down Mr. Terrell. Mr. Terrell complied, but Defendant Allgrunn became physically violent. He slammed Mr. Terrell into the hood of his patrol unit, tackled and pinned him to the ground, and proceeded to repeatedly punch him. All of this was recorded on his dash camera. During this same attack, Mrs. Terrell protested against Defendant Allgrunn's brutal misconduct, attempted to record the attack on her cellphone, and made a second call to 911 to again request help and to report Defendant Allgrunn. In response, Defendant Allgrunn grabbed Mrs. Terrell by the hair, placed her in a chokehold, and threw her into his car. He then took her and Mr. Terrell's phones.  Defendant Allgrunn finally released Mrs. Terrell when he took Mr. Terrell to the hospital for treatment for his injuries, but first threatened to rearrest her. Upon leaving the hospital, Mr. Terrell was held at the DeSoto Parish Detention Center for five days, and only released when the District Attorney declined to prosecute any charges. Defendant Allgrunn has assaulted others while working for Defendant Richardson. Despite this, he was not disciplined, even when prosecuted for malfeasance in office for his on-the-job assault of Mr. Terrell and another individual, Tony Fuller.

Plaintiffs Curtis Terrell and Angela Terrell now request that this Court grant partial summary judgment on their claims for Unlawful Search and Seizures in Violation of the Fourth Amendment and Fourteenth Amendment of the United States Constitution 42 U.S.C. § 1983 (Count 1) as to Mrs. Terrell, Excessive Force in Violation of the Due Process Clause of the Fourteenth Amendment 42 U.S.C. § 1983 (Count 2) as to both Plaintiffs, Interference with First

Amendment Speech and Retaliation in Violation of the First and Fourteenth Amendments of the United States Constitution 42 U.S.C. § 1983 (Count 4) as to Mrs. Terrell, as well as on the *Monell/Hinojosa* and Failure to Train/Supervise (Count 6), Intentional and Negligent Infliction of Emotional Distress and Negligence (Count 8), State Law False Imprisonment (Count 9), Respondeat Superior (Count 13), and Direct Action under Louisiana Revised Statute § 22:655 (Count 15) as to both Plaintiffs.

## II.    PROCEDURAL HISTORY

Plaintiffs filed a Complaint on August 6, 2020, R. Doc. 1, and Defendants filed an Answer on April 8, 2019. R. Doc. 8. Plaintiffs filed an Amended Complaint on March 24, 2021, adding Defendant Old Republic Union Insurance Company, and asserting additional claims under federal and state law. R. Doc. 19. Defendants did not answer the Amended Complaint and, instead, filed a 12(b)(6) Partial Motion to Dismiss on May 28, 2021, as to Plaintiffs' Fourth Amendment malicious prosecution claim, and arguing that the individual Defendants are entitled to Qualified Immunity. R. Doc. 21. On the same day, Defendants filed a Motion to Stay. R. Doc. 23. This Court granted Defendants' Motion to Stay on June 2, 2021. R. Doc. 24. Defendant Old Republic Union Insurance Company was formally served on July 13, 2021, R. Doc. 30, and filed its Answer on July 20, 2021. R. Doc. 32. On March 30, 2022, this Court ruled on the Motion to Dismiss and dismissed the official capacity claims against Defendants Allgrunn, Banta, and Henderson and dismissed Plaintiffs' malicious prosecution claim under the Fourth Amendment but denied Defendants qualified immunity as to all other claims. R. Doc. 36. On April 4, 2022, Plaintiff filed a Motion for Reconsideration of the Order on Motion to Dismiss based on a newly published United States Supreme Court opinion. R. Doc. 39. Defendants Richardson, Henderson, Banta and Allgrunn filed a Motion to Summary Judgment ("MSJ") on April 4, 2022, R. Doc. 38.

### III.    STATEMENT OF FACTS

**A.  Within Minutes of Arriving, Defendant Jason Allgrunn Assaulted Plaintiffs.**

On the evening of August 11, 2019, at 9:53 PM, Angela Terrell called 911 and requested medical assistance for her husband, Curtis Terrell, who had tried to overdose on pain medication.[1] The first person to respond to Mrs. Terrell's call was Defendant Jason Allgrunn of the DeSoto Parish Sheriff's Office (hereinafter "DPSO"), who arrived at Mr. and Mrs. Terrell's residence at approximately 9:58 PM.[2] When Defendant Allgrunn arrived, Mr. Terrell was standing on the side of the road and talking to his daughter on the phone.[3] Defendant Allgrunn asked Mr. Terrell if he was alright, and Mr. Terrell responded, "Yes, sir," asked if he was under arrest, and began walking back towards his house.[4] Defendant Allgrunn then accused Mr. Terrell of "running up and down the road" and ordered him to "come over here."[5] Mr. Terrell again asked if he was under arrest, to which Defendant Allgrunn responded, "[f]ailure to do so, you will be under arrest."[6] When Mr. Terrell did not immediately turn around, Defendant Allgrunn demanded that Mr. Terrell walk to his patrol unit.[7] Mr. Terrell complied, but when he asked why he was being detained, Defendant Allgrunn responded, "[c]ause I said. You think I'm playing games with you?"[8]

---

[1] R. Doc. 38, MSJ at ¶ 2; R. Doc. 38-6, Exhibit 6 to Defendants' MSJ, DEF 176, Dash Camera Video of Defendant Jason Allgrunn at 3:01-3:30, 52:00-52:30; R. Doc. 38-14, Defendant Jason Allgrunn's Incident Report, at pp. 1, 4; R. Doc. 38-16, Defendants' Memo. in Support of MSJ, at p. 1; R. Doc. 38-17, Defendants' Statement of Uncontested Facts, at ¶ 1; Exhibit A, Affidavit of Angela Terrell at ¶¶ 3- 4.

[2] R. Doc. 38-6, DEF 176, Allgrunn Video at 1:00-1:30; R. Doc. 38-14, Incident Report at p. 4; R. Doc. 38-17; Ex. A, Angela Terrell Aff. at ¶ 5; Exhibit B, Allgrunn's Response to Interrogatory No. 5 at p. 3.

[3] R. Doc. 38-6, DEF 176, Allgrunn Video, at 1:00-1:30; R. Doc. 38-16, at p. 2; R. Doc. 38-17 at ¶ 8; Exhibit C, Affidavit of Curtis Terrell at ¶ 5; Exhibit D, Affidavit of Lenzey Terrell at ¶¶ 8-9.

[4] R. Doc. 38-6, DEF 176, Allgrunn Video at 1:00-1:30; R. Doc. 38-14, Incident Report at p. 4; Ex. D, Curtis Terrell Aff. ¶¶ 6-7; Exhibit E, Transcript of Defendant Allgrunn Video at p. 2.

[5] R. Doc. 38-6, DEF 176, Allgrunn Video at 1:31-2:00; Ex. E, Video Transcript at p. 2.

[6] R. Doc. 38-6, DEF 176, Allgrunn Video at 1:31-2:00; Ex. E, Video Transcript at p. 2.

[7] R. Doc. 38-6, DEF 176, Allgrunn Video at 2:01-2:30; R. Doc. 38-16 at p. 3; Ex. C, Curtis Terrell Aff. at ¶ 7; Ex. D, Lynzey Terrell Aff. at ¶10; Ex. E, Video Transcript at p. 2; Ex. F, Allgrunn's Response to Request for Admission No. 3 at p. 2.

[8] R. Doc. 38-6, DEF 176, Allgrunn Video, at 2:01-2:30; Ex. C, Curtis Terrell Aff., at ¶ 8; Ex. E, Video Transcript at p. 3.

Mr. Terrell approached Defendant Allgrunn's car as requested, and remained compliant.[9] Defendant Allgrunn then became physically violent towards Mr. Terrell just seconds later.[10] After bringing Mr. Terrell to his vehicle, Defendant Allgrunn grabbed the back of Mr. Terrell's neck and shoved him down onto the vehicle's hood, slammed his face and chest into the car.[11] While Mr. Terrell was pressed against the car, Defendant Allgrunn proceeded to conduct a pat-down search of Mr. Terrell's person.[12] Defendant Allgrunn found nothing.[13] Defendant Allgrunn then instructed Mr. Terrell to raise his arms so that he could continue the pat-down, claiming that he still "needed to make sure [Mr. Terrell] didn't have any weapons on [him]."[14] Mr. Terrell raised his arms as Defendant Allgrunn requested, and without first attempting to pat down Mr. Terrell, Defendant Allgrunn forcibly tackled Mr. Terrell to the ground and kept him pinned down.[15] Mr. Terrell pled for Defendant Allgrunn to "be nice" to him.[16]

### B. As Defendant Allgrunn's Misconduct Worsened, Mrs. Terrell Complained and Called for Help. In Response, Defendant Allgrunn Arrested Her and Mr. Terrell.

Fearing for her husband's safety, Angela Terrell—who had been maintaining her distance on the other side of the street—began trying to record Defendant Allgrunn's actions with her cellphone.[17] Defendant Allgrunn then punched Mr. Terrell in the head multiple times while he was

---

[9] R. Doc. 38-6, DEF 176, Allgrunn Video, at 2:01-2:30.
[10] *Id.*
[11] *Id. See also* Ex. C, Curtis Terrell Aff. at ¶ 9.
[12] R. Doc. 38-6, DEF 176 Allgrunn Video at 2:01-2:30; R. Doc. 38-16 at p. 3; R. Doc. 38-17 at ¶ 15.
[13] R. Doc. 38-6, DEF 176 Allgrunn Video, at 2:01-2:30. *See also* Ex. F, Allgrunn's Response to Requests for Admission No. 5-7, pp. 2-3.
[14] R. Doc. 38-6, DEF 176, Allgrunn Video at 2:01-2:30; R. Doc. 38-14, Incident Report at p. 2; Ex. E, Video Transcript at p. 3.
[15] R. Doc. 38-6, DEF 176 Allgrunn Video at 2:01-2:30; R. Doc. 38-16 at p. 4; Ex. A, Angela Terrell Aff. at ¶ 6; Ex. C, Curtis Terrell Aff.  at ¶ 9; Ex. F, Allgrunn's Response to Request for Admission No. 10 at p. 3.
[16] R. Doc. 38-6, DEF 176 Allgrunn Video at 2:01-2:30; Ex. E, Video Transcript at p. 3.
[17] R. Doc. 38-6, DEF 176, Allgrunn Video at 2:31-3:00; R. Doc. 38-14, Incident Report at p. 4; Ex. A, Angela Terrell Aff. at ¶ 7.

still lying on the ground.[18] Defendant Allgrunn then ordered Mrs. Terrell to "back up" and stated he was charging her for "misuse of 911."[19] Mrs. Terrell asked Defendant Allgrunn, "[h]ow did I misuse 911 when he took a bunch of pain pills and I wanted my husband to be taken care of?"[20] Mr. Terrell cried out that his "back broke," [21] and only then tried to bite Defendant Allgrunn's boot in an attempt to make him stop beating him. Defendant Allgrunn responded by telling Mr. Terrell, "don't fucking bite me," and then proceeded to punch Mr. Terrell in the face.[22]

When Mrs. Terrell complained that Defendant Allgrunn kept beating Mr. Terrell, Defendant Allgrunn ordered her to "stay right there" because she "was going to jail too."[23] As Mr. Terrell tried to stand at Defendant Allgrunn's order, he stated, "[m]an you just have to kill me, dude, I'm already dead," and Defendant Allgrunn shoved him back to the ground.[24]  During this, Mrs. Terrell continued to protest Defendant Allgrunn's treatment of her husband, and Defendant Allgrunn told her, "[y]ou're interfering right now, so I suggest you be quiet."[25] Mrs. Terrell responded that she was "calling 911 again because [she] called for an ambulance."[26] While on the phone with emergency services, asking for medical help for her husband and complaining about Defendant Allgrunn's treatment, Defendant Allgrunn told Mrs. Terrell, "you [are] definitely going [to jail]."[27] While Mrs. Terrell remained on the phone, Defendant Allgrunn demanded to see her

---

[18] R. Doc. 38-6, DEF 176, Allgrunn Video at 2:31-3:00; R. Doc. 38-14, Incident Report at p. 4; R. Doc. 38-16, at p. 4; R. Doc. 38-17 at ¶ 18; Ex. A, Angela Terrell Aff. at ¶ 8; Ex. C, Curtis Terrell Aff. at ¶ 10.
[19] R. Doc. 38-6, DEF 176, Allgrunn Video at 3:01-3:30; Ex. A, Angela Terrell Aff. at ¶ 8; Ex. E, Video Transcript at p. 4.
[20] R. Doc. 38-6, DEF 176, Allgrunn Video at 3:01-3:30; Ex. E, Video Transcript at p. 4.
[21] R. Doc. 38-6, DEF 176, Allgrunn Video at 3:01-3:30; R. Doc. 38-17 at ¶ 19; Ex. E, Video Transcript at p. 4.
[22] R. Doc. 38-6, DEF 176, Allgrunn Video at 3:01-3:30; R. Doc. 38-14, Incident Report, at p. 4; Ex. E, Video Transcript at p. 4.
[23] R. Doc. 38-6, DEF 176, Allgrunn Video at 3:31-4:00; Ex. E, Video Transcript at p. 5.
[24] R. Doc. 38-6, DEF 176, Allgrunn Video at 4:01-4:30; Ex. E, Video Transcript at p. 6.
[25] R. Doc. 38-6, DEF 176, Allgrunn Video at 4:01-4:30; Ex. E, Video Transcript at p. 6; Ex. D, Lynzey Terrell Aff. at ¶ 12.
[26] R. Doc. 38-6, DEF 176, Allgrunn Video at 4:01-4:30; Ex. E, Video Transcript at p. 6.
[27] R. Doc. 38-6, DEF 176, Allgrunn Video at 5:01-5:30; R. Doc. 38-14, Incident Report at p. 4; Ex. A, Angela Terrell Aff., at ¶ 7; Ex. E, Video Transcript at p. 7.

identification.[28] When Mrs. Terrell asked why, Defendant Allgrunn accused her of "interfering with [Mr. Terrell's] arrest" and again asked for her identification.[29] Defendant Allgrunn then told Mr. Terrell that he was "under arrest for resisting a police Defendant and battery on a police officer."[30] As Mrs. Terrell continued to talk with emergency services, Defendant Allgrunn told her, "[y]ou need to calm down and be quiet . . . .You called us."[31] Mrs. Terrell responded, "no I called 911, . . . not you," and continued, "I called for an ambulance."[32]

At approximately 10:04 PM, six minutes after Defendant Allgrunn arrived on the scene the initial call to 911, Emergency Medical Services ("EMS") arrived.[33] Defendant Allgrunn smirked as he told EMS personnel, "he's bleeding from the mouth because when I took him in custody he tried to bite my ankle and he got socked."[34] Defendant Allgrunn proceeded to tell Mrs. Terrell that she had "caused enough problems" and would be "going to jail regardless."[35]

As he was being examined by medics, Mr. Terrell asked that they take him with them, stating, "I want to go with y'all. Call your officer, call your Sergeant cause I want to go with y'all. I want to feel safer."[36] Mr. Terrell also asked the EMS responder, "[d]o you know why they called in, do you know why they called in? I took a bunch of pills."[37] He then stated, "everyone of y'all see me right now. When I'm dead, that's all on [Defendant Allgrunn]," and "[t]hat was the wrong thing the way he just done me."[38] The medics then assisted Mr. Terrell off the ground and stood

---

[28] R. Doc. 38-6, DEF 176, Allgrunn Video at 6:01-6:30; Ex. E, Video Transcript at p. 9.
[29] R. Doc. 38-6, DEF 176, Allgrunn Video at 6:01-6:30; Ex. E, Video Transcript at p. 9.
[30] R. Doc. 38-6, DEF 176, Allgrunn Video at 6:01-6:30; Ex. E, Video Transcript at p. 9.
[31] R. Doc. 38-6, DEF 176, Allgrunn Video at 7:01-7:30; Ex. E, Video Transcript at p. 11.
[32] R. Doc. 38-6, DEF 176, Allgrunn Video at 7:01-7:30; Ex. E, Video Transcript at p. 11.
[33] R. Doc 38-3, Exhibit 3 to  MSJ, Desoto Parish EMS Report; R. Doc. 38-6, DEF 176, Allgrunn Video at 8:01-8:30.
[34] R. Doc 38-3, Exhibit 3 to MSJ, Desoto Parish EMS Report; R. Doc. 38-6, DEF 176, Allgrunn Video at 8:01-8:30; Ex. C, Curtis Terrell Aff. at ¶ 11.
[35] R. Doc. 38-6, DEF 176, Allgrunn Video at 8:31-9:00; Ex. E, Video Transcript at p. 11.
[36] R. Doc. 38-6, DEF 176, Allgrunn Video at 9:01-9:30; Ex. E, Video Transcript at p. 13.
[37] R. Doc. 38-6, DEF 176, Allgrunn Video at 9:31-10:00; R. Doc. 38-14, Incident Report at p. 4; Ex. E, Video Transcript at p. 13.
[38] R. Doc. 38-6, DEF 176, Allgrunn Video at 10:01-10:30; Ex. E, Video Transcript at p. 14.

him up. Mr. Terrell was visibly and severely injured. He was bleeding profusely and was barely able to stand on his own.[39]

As the medics examined Mr. Terrell, Defendant Allgrunn informed Mrs. Terrell that she was under arrest.[40] Although Mrs. Terrell did not resist and remained compliant, Defendant Allgrunn roughly grabbed her by the back of her neck and the bun on her head, pulling her by the hair, and pushed her into the back of his vehicle.[41] As Defendant Allgrunn pushed Mrs. Terrell into the back of his vehicle, he put her in a headlock, and told her that he was seizing her phone and Mr. Terrell's phone.[42] Mrs. Terrell complied and handed over the phones.[43]

While Mr. Terrell was being treated by medics and Mrs. Terrell was detained in the back of Defendant Allgrunn's car, Defendant Henderson arrived at Mr. and Mrs. Terrell's residence.[44] Defendant Allgrunn told Defendant Henderson that Mr. and Mrs. Terrell were "all going to jail," and noted that he "popped" Mr. Terrell.[45] Mr. Terrell told medics that Defendant Allgrunn knocked out two of his teeth and "threw [him] to the ground for no reason."[46] Defendant Allgrunn smiled and responded, "we'll see about that."[47] Defendant Allgrunn then bent down, directly in Mr. Terrell's face, and told him, "[a]ppearing in an intoxicated manner, 14:103. Disturbing the peace. I give you verbal commands to come over here and you refused. Resisting. Resisting. You bit me. Battery. I punched you in face. Your girlfriend is going to jail for interfering."[48] Later, Defendant

---

[39] R. Doc. 38-6, DEF 176, Allgrunn Video at 11:31-12:00.
[40] *Id.* Ex. E, Video Transcript at p. 16.
[41] R. Doc. 38-6, DEF 176, Allgrunn Video, at 12:01-12:30; R. Doc. 38-14, Incident Report at p. 4; Ex. A, Angela Terrell Aff. at ¶ 10; Ex. F, Allgrunn's Response to Request for Admission No. 15 at p. 5; Exhibit G, Richardson's Response to Request for Admission No. 6 at p. 3.
[42] Ex. A, Angela Terrell Aff. at ¶ 11; Ex. E, Video Transcript at p. 16; Ex. F, Allgrunn's Responses to Request for Admission No. 14 at p. 4; Exhibit G, Richardson's Response to Request for Admission No. 7 at p. 3.
[43] Ex. A, Angela Terrell Aff. at ¶ 11.
[44] R. Doc. 38-6, DEF 176, Allgrunn Video at 12:31-13:00; Ex. B, Allgrunn's Response to Interrogatory No. 5 at p. 3.
[45] R. Doc. 38-6, DEF 176, Allgrunn Video at 12:31-13:00; Ex. E, Video Transcript, at p. 18.
[46] R. Doc. 38-6, DEF 176, Allgrunn Video at 13:01-13:30; Ex. E, Video Transcript, at p. 18.
[47] R. Doc. 38-6, DEF 176, Allgrunn Video at 13:01-13:30; Ex. E, Video Transcript, at p. 18.
[48] R. Doc. 38-6, DEF 176, Allgrunn Video at 13:31-14:00; Ex. E, Video Transcript, at p. 19.

Allgrunn placed Mr. Terrell under arrest for "disturbing the peace and resisting a police officer and battering a police officer."[49]

Mr. Terrell pled with Defendant Henderson, explaining that he was "slammed to the ground" by Defendant Allgrunn "before [he] got a chance to bite him."[50] In response, Defendant Allgrunn laughed and said, "That is true."[51] EMS personnel determined that Mr. Terrell was suffering from "suicidal ideations" and an "open wound of the lip,"[52] marked his "chief complaint" as "attempted suicide,"[53] and noted that Mr. Terrell suffered from "physical (assault)" injuries.[54]

### C. Defendant Allgrunn Threatened Mrs. Terrell and Finally Took Mr. Terrell to the Hospital.

As the medics began to take Mr. Terrell away on a stretcher, Defendant Allgrunn finally released Mrs. Terrell from his vehicle and told her: "Don't say a word and go in your house."[55] Mrs. Terrell was kept in Defendant Allgrunn's custody, in his car, for ten minutes after Defendant Henderson arrived at the scene.[56] As Mrs. Terrell proceeded to cross the street at Defendant Allgrunn's instruction, he told her, "I can take you [to jail] if you still want to."[57]

Defendant Michael Banta then arrived at Mr. and Mrs. Terrell's house and Defendant Allgrunn told him, "[Mr. Terrell] got popped in the mouth by me."[58] He then told Defendant Banta

---

[49] R. Doc. 38-6, DEF 176, Allgrunn Video at 19:31-20:00; Ex. E, Video Transcript, at p. 24.
[50] R. Doc. 38-6, DEF 176, Allgrunn Video at 20:31-21:00; Ex. E, Video Transcript, at p. 26.
[51] R. Doc. 38-6, DEF 176, Allgrunn Video at 20:31-21:00; Ex. E, Video Transcript, at p. 26.
[52] R. Doc 38-3, EMS Report, at p. 2.
[53] Id. at p. 4.
[54] Id.
[55] R. Doc. 38-6, DEF 176, Allgrunn Video at 23:01-23:30; Ex. A, Angela Terrell Aff. ¶ 13; Ex. E, Video Transcript at p. 29.
[56] R. Doc. 38, MSJ at ¶ 2; R. Doc. 38-6, DEF 176, Allgrunn Video at 12:31-23:30; R. Doc. 38-14, Incident Report at p. 4; R. Doc. 38-16 at p. 4; R. Doc. 38-17 at ¶ 20; Ex. F, Allgrunn's Response to Request for Admission No. 15 at pp. 4-5; Ex. G, Richardson's Response to Request for Admission No. 6 at p. 3.
[57] R. Doc. 38-6, DEF 176, Allgrunn Video at 23:31-24:00; Ex. E, Video Transcript at p. 30.
[58] R. Doc. 38-6, DEF 176, Allgrunn Video at 26:01-26:30; R. Doc 38-8, Exhibit 8 to MSJ, Dash Camera Video of Michael Banta at 15:00-15:30; Ex. E, Video Transcript at p. 34.

that Mr. Terrell was "pacing back and forth"[59] and that he "struck him with a hammered fist a couple of times."[60] Defendant Allgrunn continued that he "popped [Mr. Terrell] again," because Mr. Terrell was "gnawing" on [my] boot."[61]  Defendant Allgrunn then told Defendant Banta that he "temporarily detained [Mrs. Terrell] cause she wouldn't stop interfering."[62]

At the hospital, Mr. Terrell asked Defendant Banta to have Sherriff Richardson investigate the circumstances of his arrest.[63]  While inside the hospital, Defendant Allgrunn stated: "[f]or the past twelve and a half years, I've been the bad cop,"[64] and "[i]f they warrant that one punch knocked out his teeth, I'm doing a good job!"[65] Defendant Banta then asked Defendant Allgrunn if Mr. Terrell displayed any violence towards Defendant Allgrunn when he attempted to handcuff Mr. Terrell.[66] Defendant Allgrunn falsely claimed that Mr. Terrell "pulled away" from him, so Defendant Allgrunn "swung" at him.[67] Defendant Banta then asked Defendant Allgrunn if Mrs. Terrell was physically interfering with his investigation of Mr. Terrell. Defendant Allgrunn falsely claimed that she was "standing over" him.[68]

Defendant Banta then went outside to speak with Mrs. Terrell, who was waiting in the hospital parking lot.[69] When Mrs. Terrell complained to Defendant Banta that Defendant Allgrunn

---

[59] R. Doc. 38-6, DEF 176, Allgrunn Video at 26:01-26:30; R. Doc 38-8, Banta Video at 15:00-15:30; Ex. E, Video Transcript, at p. 34.
[60] R. Doc. 38-6, DEF 176, Allgrunn Video at 26:31-27:00; R. Doc 38-8, Banta Video at 15:31-16:00; Ex. E, Video Transcript, at p. 34.
[61] R. Doc. 38-6, DEF 176, Allgrunn Video at 26:31-27:00; R. Doc 38-8, Banta Video at 16:01-16:30; Ex. E, Video Transcript at p. 34.
[62] R. Doc. 38-6, DEF 176, Allgrunn Video at 27:01-27:30; R. Doc 38-8, Banta Video at 16:01-16:30; Ex. E, Video Transcript at p. 35.
[63] R. Doc. 38-6, DEF 176, Allgrunn Video at 27:01-27:30; R. Doc 38-8, Banta Video at 16:01-16:30; Ex. E, Video Transcript at p. 35.
[64] R. Doc. 38-6, DEF 176, Allgrunn Video at 40:00-40:30.
[65] Id. at 40:31-41:00.
[66] Id. at 43:01-43:30. See also R. Doc 38-8, Banta Video at 32:00-32:30.
[67] R. Doc. 38-6, DEF 176, Allgrunn Video at 43:31-44:00; R. Doc 38-8, Banta Video at 32:00-32:30
[68] R. Doc. 38-6, DEF 176, Allgrunn Video at 45:00-45:30; R. Doc 38-8, Banta Video at 34:00-34:30
[69] R. Doc 38-8, Banta Video at 36:30-37:00.

"manhandled" her,[70] Defendant Banta responded, "for all intents and purposes you were being detained."[71] As Mrs. Terrell continued to express her concern with the way Defendant Allgrunn detained her, Defendant Banta responded, "procedurally, that's what I would have done."[72] Defendants Allgrunn, Banta, and Henderson were acting under color of law throughout these encounters.[73]

### D.  Mr. Terrell was Incarcerated at DPCC for Five Days.

After leaving the hospital, Mr. Terrell was brought to DPCC.[74] Defendant Allgrunn filled out a notarized Arrest Report at 3:40 AM on August 12, 2019.[75]  In the report, Defendant Allgrunn falsely stated that he ordered Mr. Terrell to "step in front of [his] unit to be patted down for weapons," but Mr. Terrell "pulled away" and "resisted handcuffing" by "trying to stand up [and] keeping his hands under his body." *Id.* Further, Defendant Allgrunn failed to include any details regarding his repeated use of force against Mr. Terrell and arrest of Mrs. Terrell in his Arrest Report. *Id.*

He also wrote an Incident Report on August 12, 2019.[76] In the Incident Report, Defendant Allgrunn again claimed that he "tr[ied] to detain [Mr. Terrell] due to his aggressive nature" but "had to place him on the ground to place him in handcuffs" and "delivered some closed fist strikes to gain compliance." *Id.* Defendant Allgrunn also stated that, while on the ground, Mr. Terrell "turned his head and began biting [Defendant Allgrunn's] right ankle where [Defendant Allgrunn] delivered another closed fist strike to [Mr. Terrell's] face." *Id.* In the Incident Report, Defendant Allgrunn also accused Mrs. Terrell of "calling me names," stating that "she did not want the police"

---

[70] *Id.* at 37:30-38:00.
[71] *Id.* at 38:01-38:30.
[72] *Id.* at 49:00-49:30.
[73] Ex. G Richardson's Response to Request for Admission No. 4 at p. 2.
[74] R. Doc 38-16 at p. 5; R. Doc. 38-17 at ¶ 22.
[75] R. Doc 38-10, Exhibit 10 to Defendants' MSJ, Arrest Report by Defendant Allgrunn.
[76] R. Doc. 38-14, Allgrunn Incident Report.

involved, and was "videotaping [Defendant Allgrunn] on her phone" during his "struggle with Curtis [Terrell]."*Id.* He also alleged that Mrs. Terrell "refused to step back" and "call[ed] . . . 911 to make a complaint." *Id.*  He noted that he "temporarily detained" Mrs. Terrell for "interfering in Curtis arrest [and] placed her in my unit where she refused to sit in the back." *Id.*

On August 12, 2019, at 3:48 AM, Mr. Terrell was booked into DPSDC for Resisting by Force and Disturbing the Peace by Noise, and the next day, the court set his bail at $10,500.[77] While in jail, Mr. Terrell remained severely injured. [78] Just four days after his arrest, on August 16, 2019, the District Attorney of the 42nd Judicial District (hereinafter "the DA") informed Mr. Terrell that the DA's office refused the charges, and Mr. Terrell was released from custody later that same day.[79]

### E. As a Result of Defendant Allgrunn's Abusive Misconduct, Plaintiffs Suffered Significant Damages.

After his incarceration, Mr. Terrell lost his job with the Village of Converse and has been unable to find replacement income.[80] Due to the treatment Defendant Allgrunn subjected them to, Mr. and Mrs. Terrell have both experienced severe emotional distress.[81] In October 2020, Mr. Terrell was diagnosed with Post Traumatic Stress Disorder and Major Depressive Disorder.[82] His therapist noted that Mr. Terrell developed "heightened reactions, intense fear and distrust of police officers," and an "unhealthy hypervigilance at all times."[83] Subsequently, in March 2021, Mr.

---

[77] *Id.* at p. 4; R. Doc 38-17 at ¶ 22; Ex. B, Allgrunn's Response to Interrogatory No. 5 at p. 3; Ex. G, Richardson's Response to Request for Admission No. 2 at p. 2; Exhibit H, Curtis Terrell Booking Sheet at pp. 1-2.
[78] Ex. D, Lynzey Terrell Aff. at ¶ 14.
[79] Exhibit I, District Attorney's Letter Refusing Charges against Curtis Terrell; Ex. H, Booking Sheet, at pp. 2-3.
[80] Exhibit K, Affidavit of Sara Roach at p. 2.
[81] Exhibit L, Letter from Amy Bienvenu, LCSW-BACS regarding Curtis Terrell; Exhibit M, DeSoto Parish Health Center Records for Curtis Terrell; Exhibit N, Letter from Amy Bienvenu, LCSW-BACS regarding Angela Terrell; Exhibit O, DeSoto Parish Health Center Records for Angela Terrell.
[82] Ex. L, Bienvenu Letter on Curtis Terrell at p. 2.
[83] *Id.*; Ex. D, Lynzey Terrell Aff. at ¶ 20.

Terrell was diagnosed with recurrent depression and anxiety and prescribed an antidepressant.[84] Mrs. Terrell was diagnosed with Major Depressive Disorder in October 2020, due to the "embarrassment, depressed mood, and shame that she suffered directly due to this incident [with Defendant Allgrunn]."[85] Mrs. Terrell's therapist also noted that she was struggling with the "guilt and shame" of making the 911 call and the "deterioration of her marriage due to the mental anguish both she and her spouse experienced" as a result of Defendant Allgrunn's abuse.[86] In January 2020, Mrs. Terrell was also diagnosed with recurrent depression and prescribed an antidepressant.[87]

### F. Sheriff Jayson Richardson Did Not Discipline Defendants, Even as Defendant Allgrunn was Prosecuted.

On August 28, 2019, Defendant Allgrunn was indicted by the 42nd Judicial District Court for Malfeasance in Office by a grand jury for on August 11, 2019, "being a . . . a commissioned sheriff's deputy with the Desoto Parish Sheriff's Office, . . . he committed a simple battery upon Curtis Terrell without being authorized by law to commit the battery."[88] Defendant Allgrunn was indicted for an additional count of malfeasance in office for committing a battery on Tony Fuller on October 7, 2018.[89]

In 2021, local media also repeatedly reported on Defendant Allgrunn's charges, given the egregious nature of his attacks against Mr. Terrell and Mr. Fuller.[90] Despite the videos played in

---

[84] Ex. M, DPHC Records for Curtis Terrell, at pp. 3-4.
[85] Ex. N, Bienvenu Letter on Angela Terrell, at p. 2.
[86] *Id*.; Ex. K, Affidavit of Sara Roach at p. 3.
[87] Ex. O, DPHC Records for Angela Terrell, at pp. 3-4.
[88] Exhibit P, *State of Louisiana v. Jason Allgrunn* Bill of Information at p. 1; Ex. F, Allgrunn's Response to Request for Admission No. 21 at p. 6; Ex. G, Richardson's Response to Request for Admission No. 9 at p. 4.
[89] Exhibit P, *Louisiana v. Allgrunn* Bill of Information at p. 1; Ex. F, Allgrunn's Response to Request for Admission No. 21 at p. 6; Ex. G, Richardson's Response to Request for Admission No. 9 at p. 4.
[90] Exhibit R, KLSA Investigates, Videos raise questions whether DeSoto Parish deputies used excessive force, KLSA 12, (Jul. 30, 2020, 8:09 PM CDT), https://www.ksla.com/2020/07/30/videos-raise-questions-whether-desoto-parish-deputies-used-excessive-force/; Exhibit S, Stacey Cameron, DeSoto Parish deputy accused of using excessive force now faces misdemeanor charges rather than felony, KSLA 12, (May 4, 2021, 4:30 PM CDT), https://www.ksla.com/2021/05/04/desoto-parish-deputy-accused-using-excessive-force-now-facing-misdemeanor-charges-rather-than-felony/; Exhibit T, Vickie Welborn, Former DPSO deputy banned from law enforcement; charges

the news of his assaults, and the multiple charges and pending prosecution against Defendant

Allgrunn, DPSO never investigated Defendant Allgrunn, Banta or Henderson's conduct.[91] Nor did

DPSO discipline Defendants Allgrunn, Henderson, and Banta or assign them additional

supervision or training.[92] On August 12, 2021, Defendant Allgrunn voluntarily and permanently

surrendered his Louisiana Officer Standards and Training Council (P.O.S.T.) Certificate,[93] and

two weeks later, on August 24, 2021, the DA dismissed the charges against Defendant Allgrunn

for simple battery against Mr. Terrell.[94]

### G.  Defendant Allgrunn Repeatedly Assaulted Citizens While Working.

Defendant Allgrunn's long history of assaulting citizens on the job. For example, on

October 7, 2018, Defendant Allgrunn asked Mr. Fuller to ask a minor he was driving with to come

out of a nearby store.[95] When Mr. Fuller said he would come out after he finished shopping,

Defendant Allgrunn grabbed him by the neck, threw him to the ground, and hit him the face and

head.[96] Defendant Allgrunn then proceeded to beat Mr. Fuller and yelled that he would "fuck him

up."[97] Defendant Allgrunn then arrested Mr. Fuller and charged him with resisting arrest.[98] Those

charges against Mr. Fuller were later dismissed by the DeSoto Parish District Attorney's Office.[99]

Other citizens also made public complaints against Defendant Allgrunn. For example, in March

2019, LaChristion Williams, posted publicly on Facebook that Defendant Allgrunn assaulted her

---

dismissed, KTBS 3, (Aug. 30, 2021), https://www.ktbs.com/news/former-dpso-deputy-banned-from-law-enforcement-charges dismissed/article_07b1b6be-09d5-11ec-a493-cb10e33eacda.html.
[91] Ex. G, Richardson's Response to Request for Admission No. 11 at p. 4; Ex. J, Defendant Richardson's Response to Interrogatory No. 3 at p. 3.
[92] Ex. G, Richardson's Response to Request for Admission No. 11 at p. 4; Ex. J, Defendant Richardson's Response to Interrogatory No. 3 at p. 3.
[93] Exhibit U, Notice of Dismissal and Nolle Prossequi at pp. 2-3.
[94] *Id*. at p. 1.
[95] Exhibit Q, Affidavit of Tony Fuller at ¶ 12. *See also Tony Fuller v. Jayson Richardson, DeSoto Parish Sheriff Department, and Jayson Allgrunn*, Case No. 80864, 42nd Judicial Court, DeSoto Parish, Louisiana.
[96] Ex. Q, Tony Fuller Aff. at ¶¶ 13-14.
[97] *Id*. at ¶ 14.
[98] *Id.* at ¶ 16.
[99] *Id*.

13

while he was on duty.[100] She recounted how Defendant Allgrunn threatened to tase her multiple

times and threw her onto the ground, despite Ms. Williams yelling that she was pregnant.[101]

Other individuals sued Defendant Richardson for excessive force and unlawful arrest by

other deputies. In February 2017, DPSO Deputy Martin kicked Jason Hinson, and commanded the

K-9 unit to attack him after he was handcuffed.[102]  In June 2017, a DPSO deputy punched Mr.

Charleston repeatedly while the DPSO K-9 dog unit violently attacked him.[103]  In October 2018,

Defendant Henderson and DPSO Deputy Chris Thomas groped Hannah Davis after finding

unconscious and nude below her waist. [104] On January 22, 2019, DPSO Deputies Coleman and

Bryant injured Jason Chelette when they threw him to the floor while arresting him.[105] In April

2019, Christopher Fisk was brutally attacked by DPSO's K-9 dog unit.[106] Despite Mr. Fisk's pleas,

DPSO deputies continued to beat him as the dogs bit and tore through the tendons and ligaments

from his right calve to his ankle.[107]  Julia Hunt also filed suit against DPSO Deputy Joseph Procell

in June 2019, when he refused to release her, then turned off the video in his patrol unit before he

sexually assaulted her, forcing her to perform oral sex, while he asked her "[h]ow bad do you not

want to go to jail?"[108] Officer Procell then threatened her to not tell anyone about the assault.[109]

On September 27, 2019, DPSO deputy Javaria Pouncy assaulted Jarius Brown, rendering him

---

[100] Exhibit V, Facebook Post of LaChristion Williams.
[101] *Id.*
[102] Exhibit Y, *Hinson v. Martin et al*, Opposition to MSJ, at p. 2.
[103] Exhibit Z, *Issac Charleston v. Jayson Richardson* Petition at pp.1-2.
[104] Exhibit AA, *Davis v, Richardson et. al* Complaint, R. Doc. 1, at. pp. 1, 4.
[105] Exhibit BB, *Jason Aaron Chelette v. DeSoto Parish Sheriff's Office et al*, 35th Judicial District, Docket No. 26478, Petition at p. 1. A preliminary default was entered by the Court on May 19, 2020. *See* Exhibit CC, Notice of Preliminary Default in *Chelette.*
[106] Exhibit GG, *Christopher Fisk v. Richardson et al,* Case No. 20-cv-00499, Western District of Louisiana, Complaint at p. 5; Ex. G. Richardson's Response to Interrogatory No. 1 at p. 2.
[107] Ex. GG, *Fisk* Complaint, at p. 5.
[108] Exhibit DD, *Julia Hunt v. Jayson Richardson, et al*; Civil Docket No: 5:20-cv-0062, Complaint; Ex. J, Richardson's Response to Interrogatory No. 1 at p. 2.
[109] Ex. DD*, Hunt* Complaint, at p. 5.

nearly unconscious, unable to speak, and with a swollen eye and face.[110] News coverage publicly broadcast many of these attacks and other. For instance, local coverage showed footage from March 2019 when DPSO Deputy Bates grabbed a man by the ponytail and threw him head over heels to the ground, despite the fact that the man was not resisting.[111] Despite public complaints against DPSO, Defendant Richardson still refused to investigate, discipline or train employees.[112]

Further, before he was even hired, Defendant Allgrunn persistently engaged in misconduct while employed as a Shreveport Police Department ("SPD") officer.[113] From 2009 to 2014, SPD conducted five investigations into Defendant Allgrunn for excessive use of force. *Id.* at pp. 1-6. Additionally, DPSO disciplined Defendant Allgrunn twice for being unprofessional and disrespectful towards constituents during arrests. *Id.* at pp 2,4. Further, SPD disciplined Defendant Allgrunn for failing to follow department policies, including failure to report a domestic violence incident, *Id.* at pp. 6-7., failure to read a suspect their *Miranda* rights, *Id.* at p. 8, failure to properly handle evidence, *Id.* at p. 9, failure to appear in a legal proceeding, *Id.* at pp. 6, 10-11, and causing a preventable car accident with civilians by travelling at excessive speeds, *Id.* at pp. 7, 13-14. Despite this, Defendant Richardson hired Defendant Allgrunn. Additionally, Defendant Allgrunn was publicly vocal of his support for officers who, like him, engaged in the unwarranted assault and battery of individuals during the performance of their job duties as he frequently posted graphic videos and comments on his social media.[114]

---

[110] Exhibit EE, R. Doc. 1, Complaint, *Jarrius Brown v. Javarrea Pouncy et al.*, at p. 5-7; Exhibit FF, Misty Castile, ACLU of Louisiana files suit against DeSoto sheriff's deputies, LSP alleging excessive force, Shreveport Times (Sept. 28, 2021, 3:12 PM CDT), https://www.shreveporttimes.com/story/news/2021/09/28/louisiana-aclu-excessive-force-lawsuit-desoto-parish-sheriffs-office-state-police/5902987001/.
[111] Ex. R, KLSA Investigates Article.
[112] Ex. G, Richardson's Response to Request for Admission No. 11 at p. 4; Ex. J, Richardson's Response to Interrogatory No. 3 at p. 3.
[113] Exhibit W, Excerpts from Defendant Allgrunn's SPD Personnel Record.
[114] Exhibit X, Facebook Posts from Defendant Jason Allgrunn.

Sherriff Richardson is the final policymaker for the DeSoto Parish Sheriff's Office.[115] Even though officers repeatedly engaged in crimes of violence against individuals in DeSoto Parish, Sheriff Richardson failed to provide additional training or supervision and did not discipline officers after misconduct.[116] Further, Sherriff Richardson was aware officers repeatedly detained individuals without reasonable suspicion or probable cause to believe that they were engaged in any criminal activity and yet failed to provide additional training or supervision and did not discipline officers after misconduct.[117]

Defendant Old Republic Union Insurance Company provides law enforcement liability insurance coverage to DPSO and its employees.[118] The policy covers "activities while acting as an official, officer, auxiliary officer, employee, . . . of a law enforcement agency or department of the named insured while performing a law enforcement function."[119]

## IV.    DISCUSSION

### A.  Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[120] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[121] All reasonable inferences are drawn in favor of the nonmoving party,

---

[115] *Jauch v. Choctaw Cty.*, 874 F.3d 425, 435 (5th Cir. 2017).

[116] Ex. G, Richardson's Response to Request for Admission No. 11 at p. 4; Ex. J, Richardson's Response to Interrogatory No. 3 at p. 3.

[117] Ex. G, Richardson's Response to Request for Admission No. 11 at p. 4; Exhibit J, Richardson's Response to Interrogatories Nos. 1, 3 at pp. 2-3.

[118] Exhibit HH, DPSO Insurance Policy, at pp. 3-4.

[119] *Id*. at p. 14.

[120] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[121] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398–99 (5th Cir. 2008).

but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[122] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[123]

"[A] nonmoving party is not entitled to rest on his pleadings, but must carry his burden of providing evidence of a genuine issue of material fact."[124] "That burden can be met by depositions, answers to interrogatories and admissions on file and affidavits."[125] The Fifth Circuit has "repeatedly held that self-serving affidavits, without more, will not defeat a motion for summary judgment."[126] However, a nonmovant's deposition testimony is often considered by a court in recognizing that a genuine issue of material fact exists, which precludes summary judgment.[127] The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[128] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[129] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[130] The nonmovant's burden of

---

[122] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[123] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[124] *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992) (*citing Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991)). *See also Celotex*, 477 U.S. at 325.

[125] *Id.* (*citing* Fed. R. Civ. P. 56(c)).

[126] *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed.Appx. 306, 307 (5th Cir. 2011) (per curiam) (*citing DirectTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005); *United State v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001)).

[127] *See, e.g., Vetter v. Frosch*, 599 F.2d 630 (5th Cir. 1979); *King*, 974 F.2d at 656 (5th Cir. 1992).

[128] *Celotex*, 477 U.S. at 323.

[129] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir 1994.), *cert. denied*, 513 U.S. 871 (1994).

[130] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[131] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party.

**B. Allgrunn Arrested Mrs. Terrell without a Warrantless and without Probable Cause in Violation of her Fourth Amendment Rights.**

**1. Defendant Allgrunn Lacked Probable Cause to Arrest Mrs. Terrell.**

"A seizure occurs when, under the totality of the circumstances, a law enforcement officer, by means of physical force or show of authority, terminates or restrains a person's freedom of movement."[132] Freedom of movement is restrained if "a reasonable person believes he is not free to leave."[133] If an officer undertakes "[a] warrantless arrest [then the arrest] must be based on 'probable cause.' Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[134] "'The constitutional claim of false arrest requires a showing of no probable cause.'"[135]

*a. Mrs. Terrell's Freedom of Movement was Restrained.*

As Mrs. Terrell tried to record Defendant Allgrunn beating her husband and informed him that she was making a second call to 911 for an ambulance, Defendant Allgrunn ordered her to

---

[131] *Little,* 37 F.3d at 1075.
[132] *United States v. Flowers,* No. 20-60056, 2021 U.S. App. LEXIS 22677, at *6 (5th Cir. July 30, 2021).
[133] *Laughlin v. Olszewski,* 102 F.3d 190, 193 (5th Cir. 1996) (*quoting United States v. Valdiosera-Godinez,* 932 F.2d 1093, 1099 n. 2 (5th Cir.1991)).
[134] *Resendiz v. Miller,* 203 F.3d 902, 903 (5th Cir. 2000).
[135] *Bone v. Dunnaway,* 657 F. App'x 258, 261 (5th Cir. 2016) (*citing Club Retro, L.L.C. v. Hilton,* 568 F.3d 181, 204 (5th Cir. 2009)).

"back up" and stated he was charging her for "misuse of 911."[136] Then, when Mrs. Terrell complained that Defendant Allgrunn was brutalizing Mr. Terrell, Defendant Allgrunn ordered her to "stay right there" because she "was going to jail too."[137] As Mrs. Terrell was on the phone with emergency services—asking for medical help for her husband and complaining about Defendant Allgrunn's conduct, Defendant Allgrunn told her—"you [are] definitely going [to jail]."[138] While Mrs. Terrell remained on the phone with emergency services, he then demanded to see her identification and accused her of  "interfering with [Mr. Terrell's] arrest."[139] When the medics finally arrived, Mrs. Terrell attempted to tell them about the injuries Mr. Terrell had suffered because of Defendant Allgrunn's attack.[140]  In response, Defendant Allgrunn told her that she had "caused enough problems," and would be "going to jail regardless."[141] As EMS personnel began to examine Mr. Terrell, Defendant Allgrunn placed Mrs. Terrell under arrest.[142]

Despite the fact that she was being arrested, without warrant and without probable cause, and lawfully could have resisted, all evidence shows that Mrs. Terrell did not resist.[143]  Despite Mrs. Terrell's compliance, Defendant Allgrunn then roughly grabbed her by the back of her neck and the bun on her head, pulling her by the hair, and pushed her into the back of his vehicle.[144] He then proceeded to place her in a headlock and seized her phone and Mr. Terrell's phone.[145] When Defendant Henderson arrived on the scene, Defendant Allgrunn told him that Mr. and Mrs. Terrell

---

[136] R. Doc. 38-6, DEF 176, Allgrunn Video at 3:01-3:30; Ex. A, Angela Terrell Aff. at ¶ 8; Ex. E, Video Transcript at p. 4.
[137] R. Doc. 38-6, DEF 176, Allgrunn Video at 3:31-4:00; Ex. E, Video Transcript at p. 5.
[138] R. Doc. 38-6, DEF 176, Allgrunn Video at 5:01-5:30; R. Doc. 38-14, Incident Report at p. 4; Ex. A, Angela Terrell Aff. at ¶ 7; Ex. E, Video Transcript at p. 7.
[139] R. Doc. 38-6, DEF 176, Allgrunn Video at 6:01-6:30; Ex. E, Video Transcript at p. 9.
[140] R. Doc. 38-6, DEF 176, Allgrunn Video at 9:30-10:00.
[141] R. Doc. 38-6, DEF 176, Allgrunn Video at 8:31-9:00; Ex. E, Video Transcript at p. 11.
[142] R. Doc. 38-6, DEF 176, Allgrunn Video at 11:31-12:00; Ex. E, Video Transcript at p. 16.
[143] R. Doc. 38-6, DEF 176, Allgrunn Video at 12:01-12:30.
[144] Id. See also R. Doc. 38-14, Incident Report, at p. 4; Ex. A, Angela Terrell Aff. at ¶ 10; Ex. F, Allgrunn's Response to Request for Admission No. 15 at p. 5; Exhibit G, Richardson's Response to Request for Admission No. 6 at p. 3.
[145] Ex. A, Angela Terrell Aff. at ¶ 11; Ex. E, Video Transcript at p. 16; Ex. F, Allgrunn's Response to Request for Admission No. 14 at p. 4; Exhibit G, Richardson's Response to Request for Admission No. 7 at p. 3.

were "all going to jail."[146] When Defendant Allgrunn finally released Mrs. Terrell from his patrol vehicle, he told her: "Don't say a word and go into your house,"[147] and "I can  take you [to jail] if you still want to."[148]

As Mrs. Terrell waited in the hospital parking lot as her husband received treatment for the injuries Defendant Allgrunn inflicted, she complained to Defendant Banta that Defendant Allgrunn "manhandled" her.[149] Defendant Banta responded, "for all intents and purposes you were being detained."[150] As Mrs. Terrell continued to express her concern with the way Defendant Allgrunn detained her, Defendant Banta responded, "procedurally, that's what I would have done."[151]

### b.  *Defendant Allgrunn Did Not Have Probable Cause to Detain Mrs. Terrell.*

Here, Defendant Allgrunn arrested Mrs. Terrell without a warrant,[152] and therefore, her arrest was only constitutional if he had probable cause. During the warrantless arrest of Mrs. Terrell, Defendant Allgrunn attempted to justify his unconstitutional detention by telling her she misused 911[153] and interfered with the arrest of her husband.[154] In his Incident Report, Defendant Allgrunn stated that he arrested Mrs. Terrell for interfering with the arrest of Mr. Terrell, for "calling me names," for stating that "she did not want the police" involved, and for "videotaping me on her phone" during his "struggle with Curtis [Terrell]."[155] He also alleged that Mrs. Terrell "refused to step back" and "call[ed]  . . . 911 to make a complaint."[156]

---

[146] R. Doc. 38-6, DEF 176, Allgrunn Video at 12:31-13:00; Ex. E, Video Transcript at p. 18.
[147] R. Doc. 38-6, DEF 176, Allgrunn Video at 23:01-23:30; Ex. A. at ¶ 13; Ex. E, Video Transcript at p. 29.
[148] R. Doc. 38-6, DEF 176, Allgrunn Video at 23:31-24:00; Ex. E, Video Transcript at p. 30.
[149] R. Doc 38-8, DEF 179, Banta Video at 37:30-38:00.
[150] *Id*. at 38:01-38:30.
[151] *Id*. at 49:00-49:30.
[152] Exhibit F, Allgrunn's Response to Request for Admission No. 4 at p. 2.
[153] R. Doc. 38-6, DEF 176, Allgrunn Video at 3:01-3:30; Ex. A, Angela Terrell Aff. at ¶ 8; Ex. E, Video Transcript at p. 4.
[154] R. Doc. 38-6, DEF 176, Allgrunn Video at 4:01-4:30; Ex. E, Video Transcript at p. 6; Ex. D, Lynzey Terrell Aff. at ¶ 12.
[155] R. Doc. 38-14, Allgrunn Incident Report at p.4.
[156] *Id*.

Even if true, all of the "misconduct" he accused her of, was not only lawful, but was also First Amendment protected activity and none of which interfered with Defendant Allgrunn's arrest of Mr. Terrell.[157] Mrs. Terrell was merely expressing that she did not want police involved, calling 911 and attempting to record Defendant Allgrunn. Mrs. Terrell's efforts to record or express disproval, do not provide probable cause for arrest: "verbal opposition to an officer, even abusive language and cursing, does not constitute the 'opposition' or 'obstruction' proscribed by [La.R.S.14:] 108" which criminalizes conduct amounting to Resisting an Officer.[158] As a result, none of Mrs. Terrell's activity amounts to probable cause as it would not lead a "reasonable person to conclude that the suspect had committed or was committing an offense."[159] Nor was she improperly resisting her own arrest as under Louisiana law, "a person commits the offense of resisting arrest only if he resists a 'lawful arrest'; that is, an arrest supported by probable cause."[160]

For the first time in their Memorandum in Support of Motion for Summary Judgment, R. Doc. 38-16, at p. 11, Defendants argue that Mrs. Terrell's actions "amounted to Obstructing a Fireman or Emergency Medical Services Personnel." La. R.S. §14:327(A)(1) criminalizes the intentional "hindering, delaying, hampering, interfering with, or impeding the progress" of firemen and emergency medical personnel, and prohibits "cursing, reviling, or using any opprobrious language" towards these first responders. None of Mrs. Terrell's behavior suggested probable cause that she was violating this statute. While EMS personnel examined Mr. Terrell, Mrs. Terrell

---

[157] *See* Section VI (C)(1), *infra.*
[158] *Adams v. Thompson*, 557 F. Supp. 405, 410 (M.D. La. 1983); *State v. Daigle,* 701 So.2d 685, 688 (La. App. 3 Cir. 06/11/97). (finding that a suspect's "attitude" is insufficient to support a conviction for Resisting an Officer).
[159] *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000).
[160] *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009)(*citing* La. Rev. Stat. § 14.108(A) (West 2004); *State v. Lindsay*, 388 So.2d 781, 782 (La. 1980) ("It is a long-established principle in Louisiana law that a citizen has the right to resist an unlawful arrest.")). *See also Calloway v. Abbott*, No. 07-1101, 2008 U.S. Dist. LEXIS 23449, at *26 (E.D. La. Mar. 24, 2008) (*citing State v. Manuel*, 946 So. 2d 245, 248 (La. App. 4 Cir. 11/21/06); *Gray v. Horton*, 2008 U.S. Dist. LEXIS 4194, 2008 WL 170664, at *4 (W.D. La. Jan. 18, 2008)) ("Louisiana law also provides that an individual has the right to resist either an unlawful detention or an unlawful arrest.")

watched from several feet behind them and, later, from the opposite side of the road.[161] In fact, Mrs. Terrell's only interaction with the EMS responders at the scene was giving them her husband's name[162] and attempting to tell them about the injuries Mr. Terrell had suffered because of Defendant Allgrunn's attack.[163] Ms. Terrell never used any opprobrious language. She only got a few words out before Defendant Allgrunn told her to "go away," that she had "caused enough problems," and would be "going to jail regardless."[164]

Defendants also argue that Defendant Allgrunn had "probable cause, or at minimum arguable probable cause,"[165] to arrest Mrs. Terrell for Simple Obstruction of a Highway of Commerce and Obstructing Public Passage. However, La.R.S. §14:97, ""includes a mandatory element of rendering movement more difficult on the highway,"[166] and therefore, an officer does not have probable cause to stop a civilian for obstruction of public passage unless there is evidence that the person's presence made it more difficult for the officer to pass.[167] Here, there is no evidence that Mrs. Terrell made it more difficult to travel on the street or impeded the officers' movement: Mrs. Terrell remained on the side of the road when Defendant Allgrunn arrived[168] and only walked into the middle of the street after he tackled Mr. Terrell to the ground, in an attempt to record Defendant Allgrunn's abuse.[169] At that time, no one was trying to pass on the road and Defendant Allgrunn's patrol unit was already blocking passage, as he parked in the middle of the street.[170]

---

[161] R. Doc. 38-6, DEF 176, Allgrunn Video at 8:00-12:00.
[162] R. Doc. 38-6, DEF 176, Allgrunn Video at 23:01-23:30.
[163] *Id.* at 9:30-10:00. *See also* Ex. E, Video Transcript at p. 13.
[164] R. Doc. 38-6, DEF 176, Allgrunn Video at 8:00-9:00; Ex. E, Video Transcript at p. 11.
[165] R. Doc. 38-16, Defendants' Memo. in Support of MSJ, at p. 15.
[166] *State v. Smith*, 2 So. 3d 1187, 1197 (La. App. 3 Cir 01/21/09).
[167] *State v. Malveaux*, 852 So. 2d 463, 467 (La. App. 3 Cir 06/12/03).
[168] R. Doc. 38-6, DEF 176, Allgrunn Video at 1:00-1:30.
[169] *Id.* to 2:30-3:00.
[170] *Id.*

### 2. Defendant Allgrunn was Acting Under Color of Law.

"Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of 'any rights, privileges, or immunities secured by the Constitution and laws.'"[171]  "A plaintiff can bring a claim under section 1983 against an officer in his or her individual or official capacity."[172] Defendants admit that Defendant Allgrunn was "acting as [a] DeSoto Parish Deput[y] and/or Sheriff during any encounter with plaintiffs from August 11 to August 16, 2019."[173]

### 3. Defendant Allgrunn is Not Entitled to Qualified Immunity as to Mrs. Terrell's Fourth Amendment Unlawful Arrest Claim.

If a "plaintiff sues a person in his or her individual capacity, the defendant may be protected by the doctrine of qualified immunity."[174]  Public officials are not entitled to qualified immunity if "(1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation."[175] "The right to be free from false arrest without probable cause is clearly established."[176]

In situations where individuals were not arresting arrest after being stopped for minor violations, the Fifth Circuit has repeatedly rejected officers' assertions of qualified immunity.[177]

---

[171] *Goodman v. Harris Cty.*, 571 F.3d 388, 394-95 (5th Cir. 2009).

[172] *Bone v. Dunnaway*, 657 F. App'x 258, 260 (5th Cir. 2016).

[173] Ex. G, Richardson's Response to Request for Admission No. 4 at p. 2. *See also Laughlin v. Olszewski*, 102 F.3d 190, 194 (5th Cir. 1996).

[174] *Dunnaway*, 657 F. App'x 258, 261 (5th Cir. 2016) (*citing Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[175] *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011).

[176] *Dunnaway*, 657 F. App'x 258, 261 (5th Cir. 2016) (*citing Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)). *See also Brooks v. City of W. Point*, 639 F. App'x 986, 988 (5th Cir. 2016) (*citing Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994)) ("The right to be free from arrest without probable cause is a clearly established constitutional right."); *Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009) (*citing Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004); *see Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994)) ("There is no doubt that it was clearly established in August 2005 that "[a]n arrest is unlawful unless it is supported by probable cause.")

[177] *Deville*, 567 F.3d 156, 169 (5th Cir. 2009) (declining to grant qualified immunity to an officer after they stopped the plaintiff for a minor traffic offense, and the plaintiff did not attempt to flee, and did not engage in active resistance); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (declining to grant qualified immunity to an officer because the plaintiff was not resisting arrest or attempting to flee); *Massey v. Wharton*, 477 F. App'x 256, 263 (5th Cir. 2012).

### C.  Defendant Allgrunn Violated the First Amendment.

"The First Amendment protects freedom of speech and freedom of the press."[178] "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech.[179] In order to succeed in a First Amendment claim, a plaintiff must show that "(1) [s]he 'engaged in constitutionally protected activity'; (2) [Defendant]'s actions caused [plaintiff] 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and (3) [plaintiff]'s 'adverse actions were substantially motivated against [plaintiff]'s exercise of constitutionally protected speech."[180] "Substantial motivation" requires the plaintiff to show a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury."[181] If a Plaintiff alleges an arrest was undertaken in retaliation then to demonstrate causation, the Plaintiff must show that there was no "probable cause for an officer to seize the citizen[.]"[182]

### 1.  Mrs. Terrell Engaged Speech Protected by the United States' Constitution.

"[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."[183] This is true even if that speech is "provocative and challenging" and it "is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."[184] "Courts need to be alert to arrests that are prompted by constitutionally protected speech, even when the arrestee's words are directed at a police officer performing official

---

[178] *Turner v. Driver*, 848 F.3d 678, 688 (5th Cir. 2017).
[179] *Hartman* v. *Moore*, 547 U. S. 250, 256 (2006).
[180] *Brooks v. City of W. Point*, 639 F. App'x 986, 989 (5th Cir. 2016).
[181] *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quotations omitted).
[182] *Allen v. Cisneros*, 815 F.3d 239, 245 (5th Cir. 2016).
[183] *Houston v. Hill*, 482 U.S. 451, 461 (1987).
[184] *Lewis* v. *City of New Orleans*, 415 U.S. 130 (1974).

24

tasks. Trained officers must exercise restraint when confronted with a citizen's anger over police action."[185] For example, in *Massey v. Wharton*, the Fifth Circuit held that the Plaintiff engaged in protected speech when she "did nothing but tell the police officers to leave her son alone. Her speech neither rises above inconvenience, annoyance, or unrest, nor does it constitute an incitement to immediate lawless action."[186]

Recording officers is also constitutional protected speech. "In addition to the First Amendment's protection of the broader right to film, the principles underlying the First Amendment support the particular right to film the police. . . . Filming the police contributes to the public's ability to hold the police accountable, ensure that police officers are not abusing their power, and make informed decisions about police policy."[187]

In this case, Ms. Terrell was exercising her First Amendment rights when she called 911 for medical assistance for her spouse,[188] criticized Defendant Allgrunn for how he treated her and Mr. Terrell,[189] attempted to tell EMS personnel about Defendant Allgrunn's attack on her husband,[190] and attempted to videorecord Defendant Allgrunn brutalizing Mr. Terrell.[191] *See* Section IV(B)(1), *supra*.

---

[185] *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008).
[186] 477 F. App'x 256, 264 (5th Cir. 2012).
[187] *Turner v. Driver*, 848 F.3d 678, 688 (5th Cir. 2017). *See also Gericke v. Begin*, 753 F.3d 1, 7 (1st Cir. 2014) ("Recognizing that it is firmly established that the First Amendment protects 'a range of conduct' surrounding the gathering and dissemination of information, we held [in *Glik v. Cunniffe*] that the Constitution protects the right of individuals to videotape police officers performing their duties in public."); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (holding that there exists "a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct").
[188] R. Doc. 38-6, DEF 176, Allgrunn Video at 5:01-5:30; R. Doc. 38-14, Incident Report at p. 4; Ex. A, Angela Terrell Aff. at ¶ 7; Ex. E, Video Transcript at p. 7.
[189] R. Doc. 38-6, DEF 176, Allgrunn Video at 5:01-5:30; R. Doc. 38-14, Incident Report at p. 4; Ex. A, Angela Terrell Aff. at ¶ 7; Ex. E, Video Transcript at p. 7.
[190] R. Doc. 38-6, DEF 176, Allgrunn Video at 5:01-5:30; R. Doc. 38-14, Incident Report at p. 4; Ex. A, Angela Terrell Aff. at ¶ 7; Ex. E, Video Transcript at p. 7.
[191] R. Doc. 38-6, DEF 176, Allgrunn Video at 2:31-3:00; R. Doc. 38-14, Incident Report at p. 4; Ex. A, Angela Terrell Aff. at ¶ 7.

### 2.  Defendant Allgrunn Injured Ms. Terrell.

Mrs. Terrell was injured by Defendant Allgrunn's retaliation. He placed her in a headlock and arrested her without probable cause.[192] This resulted in her suffering substantial emotional injuries, and the "deterioration of her marriage due to the mental anguish both she and her spouse experienced" as a result of Defendant Allgrunn's abuse.[193]

### 3.  Defendant Allgrunn's Arrest and Headlock of Mrs. Terrell was Substantially Motivated her Protected Speech.

Defendant Allgrunn made it clear that he was motivated to arrest Mrs. Terrell because of her constitutionally protected speech. When Mrs. Terrell began recording Defendant Allgrunn's violent attack of her husband, Defendant Allgrunn immediately responded that he would charge her for "misuse of 911."[194] Similarly, when Mrs. Terrell made a second emergency call to again ask for medical help for Mr. Terrell, and complained about Defendant Allgrunn's treatment, Defendant Allgrunn told her, "you [are] definitely going [to] jail."[195] Then, in his Incident Report Defendant Allgrunn attempted to justify his arrest of Mrs. Terrell, claiming that he arrested her because she "continued to yell at [him,] calling me names[,] stating she did not want the police and video taping me on her phone."[196]

In addition to clearly stating that he was arresting her for making these statements, the immediate temporal proximity shows that Defendant Allgrunn was "substantially motivated" by constitutionally protected speech.[197] Here, Defendant Allgrunn retaliated against Mrs. Terrell

---

[192] *See* Section IV (B)(1), *supra*.

[193] Ex. N, Bienvenu Letter on Angela Terrell, at p. 2; Ex. O, DPHC Records for Angela Terrell at pp. 3-4.

[194] R. Doc. 38-6, DEF 176 Allgrunn Video at 3:01-3:30; Ex. A, Angela Terrell Aff. at ¶ 8; Ex. E, Video Transcript at p. 4.

[195] R. Doc. 38-6, DEF 176, Allgrunn Video at 5:01-5:30; R. Doc. 38-14, Incident Report at p.4; Ex. A, Angela Terrell Aff. at ¶ 7; Ex. E, Video Transcript at p. 7.

[196] R. Doc. 38-14, Incident Report at p. 4.

[197] *Keenan v. Tejeda*, 290 F.3d 252, 261 (5th Cir. 2002). (The Court determined, "because the harassment followed a few months after the report was aired, there is sufficient evidence that the defendants' actions were substantially motivated as a response to the plaintiffs' exercise of protected conduct.").

while she was still engaging constitutionally protected speech. For example, he told her that he was going to arrest her when she began recording the incident with her cellphone, and immediately after she complained about his treatment to the emergency dispatcher. He proceeded to detain her in his vehicle just minutes after these threats to arrest her for engaging in First Amendment activities.

### 4.  Defendant Allgrunn was Acting Under Color of Law.

As discussed in Section IV(B)(2), *supra,* Defendant Allgrunn was acting under color of state law as Defendants admit, Defendant Allgrunn "act[ed] as [a] DeSoto Parish Deput[y] and/or Sheriff during any encounter with plaintiffs from August 11 to August 16, 2019."[198]

### 5.  Defendant Allgrunn is Not Entitled to Qualified Immunity.

In 2017, *Turner v. Driver*, the Fifth Circuit determined that going forward, "[w]e conclude . . . that a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions."[199] Despite this, over two years later, on August 11, 2019, Defendant Allgrunn explicitly said he was arrested Mrs. Terrell for trying to record him on her phone, and then took her phone and put her in a headlock. He should not be entitled to qualified immunity to defend him from suit for those actions. officer retaliation because an individual complained about the officer's misconduct was also clearly established in 2019.[200]

### D.  Defendant Allgrunn used Excessive Force Against Plaintiffs.

"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures."[201] "To prevail on an excessive-force claim, the plaintiff must show (1) an injury, (2) that resulted directly from an

---

[198] Ex. G Richardson's Response to Request for Admission No. 4 at p. 2.
[199] 848 F.3d 678, 688 (5th Cir. 2017).
[200] *Massey v. Wharton*, 477 F. App'x 256, 264 (5th Cir. 2012) (holding that that the right to criticize police during encounter with family member "was clearly established at the time of the actions here" in this Circuit in 2012).
[201] *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (*citing Graham v. Connor*, 490 U.S. 386, 389, 394 (1989)).

officer's use of force, and (3) that the force used was 'objectively unreasonable.'"[202]  Determining whether the force used was objectively unreasonable depends on "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."[203]  The Supreme Court has directed courts to utilize the *Graham* factors to look at "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[204]

### 1. Plaintiffs were Injured by Defendant Allgrunn.

Within two minutes after arriving on the scene in response to Mrs. Terrell's 911 call for medical assistance for Mr. Terrell, Defendant Allgrunn grabbed the back of Mr. Terrell's neck and shoved him down onto the vehicle's hood, slamming his face and chest into the car.[205] Defendant Allgrunn then used his full body to forcibly tackle Mr. Terrell to the ground and then kept him pinned down,[206] and violently punched Mr. Terrell in the head multiple times.[207] During that entire time, Defendant Allgrunn continued to pin Mr. Terrell to the ground.[208] When Mr. Terrell tried to stand at Defendant Allgrun's order, he told Defendant Allgrunn, "[m]an you just have to kill me, dude, I'm already dead."[209] Defendant Allgrunn responded by shoving Mr. Terrell back to the ground.[210] This resulted in "blunt trauma to [the] mouth and lips,"[211] a "punch [which] knocked

---

[202] *Estate of Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021) (*citing Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004)).
[203] *Tolan*, 572 U.S. at 656.
[204] *Graham v. Connor*, 490 U.S. 386, 396 (1989).
[205] R. Doc. 38-6, DEF 176 Allgrunn Video at 2:01-2:30; Ex. C, Curtis Terrell Aff., at ¶ 9.
[206] R. Doc. 38-6, DEF 176 Allgrunn Video at 2:01-2:30; R. Doc. 38-16 at p. 4; Ex. A, Angela Terrell Aff., at ¶ 6; Ex. C, Curtis Terrell Aff.  at ¶ 9; Ex. F, Allgrunn's Response to Request for Admission No. 10 at p. 3.
[207] R. Doc. 38-6, DEF 176, Allgrunn Video at 2:31-3:00; R. Doc. 38-14, Incident Report at p. 4; R. Doc. 38-16 at p. 4; R. Doc. 38-17 at ¶ 18; Ex. A, Angela Terrell Aff., at ¶ 8; Ex. C, Curtis Terrell Aff. at ¶ 10.
[208] R. Doc. 38-6, DEF 176, Allgrunn Video at 2:01-2:30; Ex. A, Angela Terrell Aff. at ¶ 6.
[209] R. Doc. 38-6, DEF 176, Allgrunn Video at 4:01-4:30; Ex. E, Video Transcript at p. 6.
[210] R. Doc. 38-6, DEF 176, Allgrunn Video at 4:01-4:30.
[211] R. Doc 38-9, ER Report at p. 8.

out his teeth,"[212] as well as substantial emotional injuries including a new diagnosis of Post-Traumatic Stress Disorder and Major Depressive Disorder, [213] and anxiety requiring antidepressants.[214] As described in Section III(E), *supra,* Defendants' misconduct injured Mrs. Terrell as well.

### 2.  Defendant Allgrunn's Use of Force was Objectively Unreasonable.

"[O]fficers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.'"[215] Because reasonableness is the "ultimate touchstone" of the Fourth Amendment,[216] excessiveness turns upon whether the degree of force used was reasonable in light of the totality of the circumstances facing the officer.[217] The "[f]actors to consider include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"[218]

As discussed in Section IV(B)(1), *supra,* there was no probable cause to believe Mrs. Terrell had committed any crime, and as demonstrated by the video footage, she posed no threat to the safety of anyone, and was not resisting or evading arrest.[219] Despite this, he grabbed her hair, placed in her a headlock and forced her body into his police car.[220] The use of this force was excessive, and no force was necessary.[221]

---

[212] R. <u>Doc. 38-6</u>, DEF 176, Allgrunn Video at 40:31-41:00.
[213] Exhibit L, Bienvenu Letter on Curtis Terrell at p. 2.
[214] Exhibit M, DPHC Records for Curtis Terrell at p. 2.
[215] *Deville v. Marcantel*, <u>567 F.3d 156, 167</u> (5th Cir. 2009).
[216] *Brigham City v. Stuart*, <u>547 U.S. 398, 403</u> (2006).
[217] *Perry v. City of Bossier*, No. 17-0583, <u>2018 U.S. Dist. LEXIS 179421, at *30-32</u> (W.D. La. Oct. 17, 2018)(*citing Graham*, <u>490 U.S. at 396</u>).
[218] *Graham*, <u>490 U.S. at 396</u>.
[219] R. <u>Doc. 38-6</u>, DEF 176, Allgrunn Video at 12:01-12:30.
[220] *Id.;* Ex. A, Angela Terrell Aff. at ¶ 10.
[221] *Darden v. City of Fort Worth*, <u>880 F.3d 722, 731</u> (5th Cir. 2018) ("[A] constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest."); *Perry v. City of Bossier*, No. 17-0583, <u>2018 U.S. Dist. LEXIS 179421, at *48</u> (W.D. La. Oct. 17, 2018).

The force used as to Mr. Terrell was also excessive. Defendant Allgrunn was called to the seen by Mrs. Terrell, who reached out to 911 requested medical assistance for Mr. Terrell, and not because of any allegation that he had committed a crime. Defendants now argue that Defendant Allgrunn had probable cause to believe that Mr. Terrell committed the crimes of Simple Obstruction of a Highway of Commerce and Obstructing Public Passage. As discussed *supra,* this requires Mr. Terrell impeding the officers passage on the road, which never occurred.[222] Even if the record supported a showing of probable cause as to Mr. Terrell, these non-violent offenses would not justify use of force, as the "the severity of the crime at issue" is not substantial. Further, force was unwarranted as the evidence shows that Mr. Terrell was not a safety threat and was not evading arrest. At Defendant Allgrunn's request, Mr. Terrell approached Defendant Allgrunn and his police car, and as soon as he got to the car. This was an unreasonable use of force since Mr. Terrell was not accused of a serious crime and was not resisting arrest.[223] Nor does the video show that he was a threat to anyone. Despite all this, Mr. Terrell was Defendant Allgrunn slammed him into the police car.[224] Defendant Allgrunn claimed in his police report that Mr. Terrell was a risk to others as he "tr[ied] to detain [Mr. Terrell] due to his aggressive nature."[225] However, these statements directly contradict the video evidence, which show he was not acting aggressively, and therefore, should not be credited because "[i]t is a long-established principle in Louisiana law that a citizen has the right to resist an unlawful arrest."[226] Further, the statements of Defendant Allgrunn

---

[222] *State v. Smith,* 2 So. 3d 1187, 1197 (La. App. 3 Cir 01/21/09); *State v. Malveaux,* 852 So. 2d 463, 467 (La. App. 3 Cir 06/12/03).

[223] *Estate of Aguirre v. City of San Antonio,* 995 F.3d 395, 419-20 (5th Cir. 2021) (finding excessive force was unreasonable where a plaintiff "was not resisting, posed no immediate safety threat, and was presenting reasons to believe he was on drugs").

[224] R. Doc. 38-6, DEF 176 Allgrunn Video, at 2:01-2:30; Ex. C, Curtis Terrell Aff., at ¶ 9.

[225] R. Doc. 38-14, Incident Report, at p. 4.

[226] *State v. Lindsay,* 388 So.2d 781, 782 (La. 1980).

in his arrest report should not be credit by this Court because his statements throughout that report are "'blatantly contradicted' by video evidence[.]"[227]

Defendant Allgrunn also used excessive force when he threw Mr. Terrell to the ground, pinned him down, and punched him in the head repeatedly.[228] And in his incident report, Defendant Allgrunn even admitted that he "place[d] him on the ground to place him in handcuffs" and "delivered some closed fist strikes to gain compliance."[229] However, the video demonstrates Defendant Allgrunn struck Mr. Terrell as soon as he went to the ground, and that Mr. Terrell did nothing to warrant Defendant Allgrunn's actions to "gain compliance." As a result, the use of force was unreasonable.[230]

Nor would the use of force be justified by Defendants' newly invented argument in their Memorandum in Support of their Motion for Summary Judgment, R. Doc. 38-16, at pp. 9-10, that Defendant Allgrunn was not arresting Mr. Terrell at all, and that he was actually placing Mr. Terrell into "protective custody" pursuant to La.R.S. § 28:53. First, this argument is contrary to all evidence—as it is clear Defendant Allgrunn was not placing Mr. Terrell into protective custody,.

---

[227] *Perry v. City of Bossier*, No. 17-0583, 2018 U.S. Dist. LEXIS 179421, at *34 (W.D. La. Oct. 17, 2018). *See also Scott v. Harris*, 550 U.S. 372, 380 (2007) (explaining that when "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

[228] R. Doc. 38-6, DEF 176 Allgrunn Video, at 2:01-3:00; R. Doc. 38-14, Incident Report, at p. 4; R. Doc. 38-16 at p. 4; Ex. A, Angela Terrell Aff., at ¶ 6; Ex. C, Curtis Terrell Aff.  at ¶ 9; Ex. F, Allgrunn's Response to Request for Admission No. 10 at p. 3.  All of this force occurred before Defendant Allgrunn alleges that Mr. Terrell bit his boot.

[229] R. Doc. 38-14, Incident Report, at p. 4.

[230] *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (holding that force is unreasonable when arrestee is not actively resisting and "[t]his is especially so when the force is applied after the suspect has been restrained and subdued, as may have been the case here"). *See also Curran v. Aleshire*, 800 F.3d 656, 661 (5th Cir. 2015) ("It is not reasonable for officers to apply force to a suspect who is handcuffed[.]"); *Ramirez v. Martinez*, 716 F.3d 369, 378 (5th Cir. 2013) (finding that a suspect pulling his arm out of an officer's grasp, without more, was insufficient to find an immediate threat to the safety of the officers to justify the amount of force used); *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008) ("[T]he test is clear enough that [Defendant] should have known that he could not forcefully slam [Plaintiff's] face into a vehicle while she was restrained and subdued."); *McCue v. City of Bangor*, 838 F.3d 55, 64 (1st Cir. 2016) (holding "that exerting significant, continued force on a person's back while that person is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force."); *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008); *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005) (holding that, under the *Graham* factors, officer's kneeling on the back of prone suspect who had not resisted and posed no serious threat would, if proven at trial, amount to excessive force).

Defendant Allgrunn repeatedly told Mr. Terrell he was being arrested and under arrest, he authored

an Arrest Report for Mr. Terrell, and DPSO booked Mr. Terrell into its jail, and brought him before

a judge for arraignment and only released him from jail after five days when the DA dismissed

charges. La.R.S. § 28:53 only authorizes officers to take individuals to the hospital—and does not

authorize any of these other activities. Defendant Allgrunn injured Mr. Terrell while arresting him

and merely took him to the hospital on his way to jail.

Further, even if Defendant Allgrunn was taking Mr. Terrell into protective custody, La.R.S.

§ 28:53 does not authorize slamming or punching a person to bring them into protective custody,

and Mr. Terrell still had the protection of the Fourth Amendment prohibition against excessive

force while in protective custody.[231] If the *Graham* factors are applied based on the argument that

Mr. Terrell was actually being placed in protective custody, it is clear the force was excessive, as

then, he was not accused of committing any crime and he was not resisting or evading arrest, since

he was being placed in protective custody, as Defendants argue, and not arrested.

### 3.  Defendant Allgrunn was Acting Under Color of Law.

As discussed in Section IV(B)(2), *supra,* Defendants admitted that Defendant Allgrunn

was acting under color of state law when he responded to the call and assaulted the Terrells.[232]

### 4.  Defendant Allgrunn Should be Denied Qualified Immunity.

The right to be free from excessive force was clearly established long before Defendant

Allgrunn attacked Mr. and Mrs. Terrell.[233]

---

[231] *Cf. Caniglia v. Strom*, 141 S. Ct. 1596, 1600 (2021). *See also Schoellmann v. Treuting*, No. 05-2851, 2006 U.S. Dist. LEXIS 104532, at *5 (E.D. La. July 26, 2006) (declining to dismiss fourth amen excessive force claim even when there was a Physician's Emergency Certificate issued under La.R.S. 28:53).

[232] Ex. G Richardson's Response to Request for Admission No. 4 at p. 2. *See also Laughlin v. Olszewski*, 102 F.3d 190, 194 (5th Cir. 1996).

[233] *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018) (holding that this right to be free from excessive force, including "violently slam[ming] an arrestee who is not actively resisting arrest" was clearly established as of 2013). *See also Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009); *Perry v. City of Bossier*, No. 17-0583, 2018 U.S. Dist. LEXIS 179421, at *35 (W.D. La. Oct. 17, 2018).

### E. The Official Capacity Defendants are Liable for the First and Fourth Amendment Violations of Both Plaintiffs.

Under the theory developed by the United States Supreme Court in *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978), a sheriff's office is liable under Section 1983 if its "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."[234]  In addition to an official custom or policy, a local government entity "may be liable [based on an] unofficial custom; or (3) a deliberately indifferent failure to train or supervise."[235] In addition to showing the policy, custom or failure to train or supervise the Plaintiff must show "sufficient causation between the specific policy decision and the resulting constitutional injury."[236]

### 1. DPSO's Official Policy Resulted in the Deprivation of Plaintiffs' Rights.

Sheriff Richardson is the final policy maker for DeSoto Parish Sheriff's Office.[237] Here, Defendant Richardson established unconstitutional customs and practices.. Under *Monell*, "[t]he custom need not be formally adopted," and "the Fifth Circuit has held that an 'official policy' may be a persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[238] Here, DPSO has a pattern and practice of using excessive force and arresting individuals without probable cause.

Plaintiffs have a plethora of examples of that egregious behavior even at this early stage in discovery. For example, on August 28, 2019, Defendant Allgrunn was indicted by the 42nd

---

[234] *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (*quoting Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)).
[235] *City of, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *Monell*, 436 U.S. at 694.
[236] *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000).
[237] *Jauch v. Choctaw Cty.*, 874 F.3d 425, 435 (5th Cir. 2017).
[238] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984).  *See also Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000).

Judicial District Court for Malfeasance in Office by a grand jury for on August 11, 2019, "intentionally performed his duty [as a Sheriff] in an unlawful manner . . . [when] he committed a simple battery upon Curtis Terrell without being authorized by law to commit the battery."[239] After the DA issued charges against Defendant Allgrunn for Mr. Terrell, they later added charges for assaulting Mr. Fuller. [240] As a result of these charges, on August 12, 2021, Defendant Allgrunn permanently surrendered his Louisiana Officer Standards and Training Council (P.O.S.T.) Certificate.[241] Despite this, Defendant Richardson never disciplined Defendant Allgrunn or the other defendants.[242]

Defendant Richardson knew of Defendant Allgrunn's repeated attacks on local citizens based on the prosecution, and the local media repeatedly reporting on Defendant Allgrunn's assaults on citizens,[243] and community members posting widely on Facebook as well.[244] Defendant Richardson also knew of many other DPSO officers using excessive force and making unlawful arrests even before the Terrells were assaulted. Several other injured citizens filed suit against Defendant Richardson for the excessive force, unlawful arrests, and deprivation of Constitutional rights by DPSO officers. For example, in February 2017, DPSO Deputy Martin assaulted and injured Jason Hinson,[245] and just months later, in June 2017, a DPSO deputy struck Isaac Charleston and commanded a DPSO K-9 dog to attacked him.[246] In October 2018, Defendant

---

[239] Exhibit P, *State of Louisiana v. Jason Allgrunn* Bill of Information at p. 1; Ex F, Allgrunn's Response to Request for Admission No. 21 at p. 6; Ex. 11, Richardson's Response to Request for Admission No. 9 at p. 4.

[240] Exhibit Q, Tony Fuller Aff. at ¶ 12; *Tony Fuller v. Jayson Richardson, DeSoto Parish Sheriff Department, and Jayson Allgrunn*, Case No. 80864, 42nd Judicial Court, DeSoto Parish, Louisiana.

[241] Exhibit U, Notice of Dismissal and Nolle Prossequi at pp. 2-3.

[242] Ex. G, Richardson's Response to Request for Admission No. 11 at p. 4; Ex. J, Richardson's Response to Interrogatory No. 3 at p. 3.

[243] Ex. R, KLSA Investigates Article; Ex. S, KLSA 12 Article; Ex. T, KTBS Article.

[244] Exhibit V, Facebook Post of LaChistion Williams (posting that around March 24, 2019, Defendant Allgrunn threw her onto the ground and threatened to tase her multiple times, despite her repeatedly telling him that she was pregnant).

[245] Ex. Y, *Hinson v. Martin et al* Opposition to MSJ, at p. 2.

[246] Ex. Z, *Issac Charleston v. Jayson Richardson* Petition at pp.1-2.

Henderson and DPSO Deputy Chris Thomas groped Hannah Davis.[247]   In April 2019, DPSO officers commanded a K-9 dog unit to attack Christopher Fisk.[248] On January 22, 2019, DPSO Deputies Coleman and Bryant injured Jason Chelette when they threw him to the floor.[249] In June 2019, another DPSO Deputy, Joseph Procell, unlawfully detained Julia Hunt, "groped her breasts, buttocks and her genitals," forced her to perform oral sex.[250] On September 27, 2019, Javarrea Pouncy, a deputy in the DPSO detention center assaulted Jarius Brown.[251]

Together, these incidents are sufficient to show a pattern and practice of unlawful arrests and use of excessive force amounting to a custom or policy of Defendant Richardson. Defendant Richardson admits that the defendants were acting pursuant to DPSO policy and that "the actions of defendants were  . . . not in violation of sheriff law enforcement policies or procedures during any encounter with plaintiffs from August 11 to August 16, 2019."[252] The Plaintiffs were directly injured by DPSO's policy of allowing arrests without probable cause, and of allowing excessive force in encounters with individuals by officers, as Plaintiffs were subjected to the exact same pattern of tortious and unconstitutional conduct as other residents of DeSoto Parish as described above. Absent these policies, their rights would not have been violated.

### 2. DPSO's Failure to Train, Investigate, Supervise and Discipline Officers Resulted in the Violation of Mr. and Mrs. Terrell's rights.

As described in Section III(G) *supra,* Sherriff Richardson was aware officers repeatedly detained individuals without reasonable suspicion or probable cause to believe that they were engaged in any criminal activity. Defendant Terrell's conduct alone was so egregious it caught the

---

[247] Ex. AA, *Davis* Complaint, at. pp. 1,4.
[248]  Exhibit GG, *Fisk* Complaint at p. 5; Ex. J Richardson's Response to Interrogatory No. 1 at p. 2.
[249] Exhibit BB, *Chelette* Petition at p. 1. Preliminary default was entered on May 19, 2020. *See* Exhibit CC, Notice of Preliminary Default in *Chelette*.
[250] Ex. DD, *Hunt* Complaint, at pp. 3-4.
[251] Ex. EE, *Brown* Complaint, at pp.5-7.
[252] Ex. G, Richardson's Response to Request for Admission No. 5 at p. 3.

attention of both the DA, who prosecuted him for malfeasance in office for his treatment of Mr. Terrell and Mr. Fuller. It also was so egregious that local media began to report on Defendant Allgrunn in particular.[253]  DPSO also failed to investigate Defendants Henderson and Banta.[254] Further, DPSO did not discipline Defendants Allgrunn, Henderson, and Banta or assign them additional supervision or training.[255]  Even after charges were filed, Defendant Allgrunn was not terminated, and only left when he voluntarily resigned in August 2021.[256]

Other officers employed by DPSO also habitually violated the rights of citizens during routine encounters by using excessive force and engaging in unlawful arrests. *See* Section III(G), *supra.* Despite all of this, DPSO did not investigate these incidents, and without additional training continued to allow these officers to perpetuate the same violations without retraining and without supervision.[257] These officers also were not disciplined.[258] As a result, DPSO is also liable under *Monell* for failing to train or discipline its employees.[259]

Together, this shows a deliberate indifference as Defendant Richardson and other leadership were clearly aware of the routine constitutional violations through frequent criminal prosecutions of its own officers, lawsuits in state and federal court, repeated press coverage, and yet, failed to take any action to change this custom. Given this policy and custom of warrantless arrests, and utilization of excessive force, Plaintiffs would not have been injured by Defendant Allgrunn. As a result, DPSO should be held liable for its unconstitutional policy and custom.

---

[253] Ex. R, KLSA Investigates Article; Ex. S, KSLA 12 Article; Ex. T, KTBS Article.
[254] Ex. G, Richardson's Response to Request for Admission No. 11 at p. 4; Ex. J, Richardson's Response to Interrogatory No. 3 at p. 3.
[255] Ex. G, Richardson's Response to Request for Admission No. 11 at p. 4; Ex. J, Richardson's Response to Interrogatory No. 3 at p. 3.
[256] Exhibit R, KLSA Investigates Article; Exhibit U, Notice of Dismissal and Nolle Prossequi at pp. 2-3.
[257] Ex. G, Richardson's Response to Request for Admission No. 11 at p. 4; Ex. J, Richardson's Response to Interrogatory No. 3 at p. 3.
[258] Ex. G, Richardson's Responses to Request for Admission No. 11 at p. 4; Ex. J, Richardson's Response to Interrogatory No. 3 at p. 3.
[259] *Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009) (*citations omitted*).

### 3.  Defendant Richardson's Hiring of Defendant Allgrunn was Deliberately Indifferent.

Further, DPSO is liable under *Monell* for its decision to hire Defendant Allgrunn. Where, as here, "adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'"[260]

Defendant Richardson hired Defendant Allgrunn when it was plainly obvious that he would violate the rights of individuals they encountered on the job. Prior to his hire, Allgrunn had a lengthy history of violating the Fourth Amendment rights of individuals he encountered while engaging in his official duties as a Shreveport Police Department ("SPD") officer.[261] From 2009 to 2014, SPD conducted five investigations into Defendant Allgrunn for excessive use of force, *Id.* at pp. 1-6, and disciplined Defendant Allgrunn twice for being unprofessional and disrespectful towards constituents during arrests, *Id.* at pp 2,4. SPD also disciplined him for failing to follow department policies, including failure to report a domestic violence incident, *Id.* at pp. 6-7,  failing to read a suspect their *Miranda* rights, *Id.* at p. 8, failing to properly handle evidence, *Id.* at p. 9, failing to appear in a legal proceeding, *Id.* at 6, 10-11, and causing a preventable car accident with civilians by traveling at excessive speeds. *Id.* at pp. 7, 13-14. Further, Defendant Richardson knew or should have known that Defendant Allgrunn was also publicly vocal of his support for officers who, like him, engaged in the unwarranted assault and battery of individuals during the

---

[260] *Bd. of the Cty. Comm'rs v. Brown,* 520 U.S. 397, 411 (1997).
[261] Exhibit W, Excerpts from Defendant Allgrunn's SPD Personnel Record.

performance of their job duties, as he posted graphic videos and support for them on his social media account.[262]

Despite this egregious record, DPSO hired Defendant Allgrunn.  As expected based on his prior record, once at DPSO, Defendant Allgrunn continued to engage in repeated egregious conduct. *See* Section III(G), *supra*.

### F.  Defendant Allgrunn Committed Assault and Battery Against Mrs. Terrell.

Plaintiff Mrs. Terrell also seeks summary judgment as to his assault and battery claims under Louisiana law in Count 11. La.Civ.Code Article 2315 provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." This includes acts of assault and battery. "The intentional tort of battery is a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact."[263] "An assault is the imminent threat of a battery."[264]

Defendant Allgrunn subjected Mrs. Terrell to harmful and offensive conduct when he placed her in a headlock, handcuffed her and forced her to remain in his police car.[265] The facts are sufficient to demonstrate intent as Mrs. Terrell did not consent to the contact, and Defendant Terrell undertook his actions with the intent of touching Mrs. Terrell.[266]  Further, Mr. Terrell's unlawful arrest of Mrs. Terrell is no defense "where a warrantless arrest lacks probable cause, an

---

[262] Exhibit X, Facebook Posts from Defendant Allgrunn. Defendant Allgrunn has refused to produce these posts in response to discovery requests and has since deleted them from his page.
[263] *Griffith v. Young*, 62 So. 3d 856, 859 (La. App. 2 Cir 04/13/11).
[264] *Perry v. City of Bossier*, No. 17-0583, 2018 U.S. Dist. LEXIS 179421, at *45 (W.D. La. Oct. 17, 2018) (quotations omitted).
[265] *Ortego v. Landry*, 746 So. 2d 613, 622 (La. App. 3 Cir 08/11/99) (upholding jury's verdict against officer for assault and battery based on placing plaintiff in a headlock, among other actions).
[266] *Doe v. Breedlove*, 906 So. 2d 565, 572 (La. App. 1 Cir 2/11/05), ("'The defendant's intention need not be malicious nor need it be an intention to inflict actual damage. It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other's consent.'"); Restatement (Second) of Torts § 8A (1965) ("The word 'intent' is used . . . to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.").

officer's use of force is to be analyzed as a battery."[267] Mrs. Terrell suffered severe emotional damages as a result of Defendant Allgrunn's attack on her, as described in Section III (E), *supra*.

### G. Defendant Allgrunn Falsely Arrested and Imprisoned Mrs. Terrell.

Mrs. Terrell is entitled to summary judgment on False Imprisonment and False Arrest under Louisiana law. Under Louisiana law, these two causes of action are treated as one.[268] The Louisiana Supreme Court has held "[f]alse arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority. Simply stated, it is restraint without color of legal authority."[269] A restraint without color of legal authority occurs if an officer does not have "have probable cause for the arrest."[270] Because false imprisonment is not an intentional tort under Louisiana law, "[m]alice is not a necessary element of the tort of false imprisonment and is immaterial except as it may affect the question of damages."[271] Thus, "[t]here is no requirement of proving that the confinement be intentional."[272] Subsequently, the only elements of the claim are (1) proof of imprisonment and (2) lack of legal authority.[273]

Here, Defendant Allgrunn told Mrs. Terrell was going to jail and being arrested, asked for her identification, placed her in a headlock, took her phone and Mr. Terrell's phone from her,

---

[267] *Perry v. City of Bossier*, No. 17-0583, 2018 U.S. Dist. LEXIS 179421, at *45 (W.D. La. Oct. 17, 2018) (*quoting Ross v. Sheriff of Lafourche Par.*, 479 So. 2d 506, 511 (La. App. 1 Cir. 1985)). Further, "a person may resist an unlawful arrest in order to prevent an illegal restraint of liberty to the extent necessary under the circumstances . . . [and] should a police officer with no probable cause to believe that a person has committed a crime use physical violence to overcome the person's resistance, his actions constitute a battery." *McDaniel v. Green*, 755 So. 2d 942, 947 (La. App. 3 Cir 12/22/99). *See e.g. Harvey v. City of Eunice Police Dep't*, 62 So. 3d 290, 295 (La. App. 3 Cir 04/06/11) ("We note that, as a threshold issue, if the arrest was not lawful, the use of force by the officer to overcome the arrestee's resistance constitutes a battery[.]"). Further, here, Mrs. Terrell did not try to resist Defendant Allgrunn's efforts to arrest her.

[268] *Kyle v. City of New Orleans*, 353 So. 2d 969, 971 (La. 1977).

[269] *Id. See also Thomas v. Gullotta*, 15-cv-00435, R. Doc. 64, *21 (M.D. La., Jan. 26, 2017).

[270] *Deville v. Marcantel*, 567 F.3d 156, 172 (5th Cir. 2009) (*citing State v. Hathaway*, 411 So.2d 1074, 1078-79 (La. 1982)).

[271] *Fontenot v. Lavergne*, 365 So.2d 1168, 1170 (La. App. 3 Cir. 1978).

[272] *Prisk v. Palazzo*, 668 So.2d 415, 417 (La. App. 4 Cir. 01/19/1996).

[273] *Kyle v. City of New Orleans*, 353 So. 2d 969, 971 (La. 1977); *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 690 (La. 2006) (*citing Tabora v. City of Kenner*, 650 So.2d 319, 322 (La. App. 5 Cir. 01/18/95); *Roy v. Bordelon*, 164 So. 3d 367, 377 (La. App. 3 Cir. 04/29/15).

detained her in his car, and told that she was detained.[274] Further, there is no genuine issue of material fact that Mrs. Terrell was held against her will. As discussed in Section IV(B)(1), *supra*, Mrs. Terrell was arrested without probable cause, and therefore, without legal authority.[275] Thus, both elements of the Louisiana tort of false imprisonment have been established, and summary judgment can be issued.

### H.  Summary Judgment Should be Granted against Defendant Allgrunn for Negligent and Intentional Infliction of Emotional Distress.

"A claim for intentional infliction of emotional distress requires the plaintiff to prove three things: '(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.'"[276]

Here, Defendant Allgrunn's tackling and repeatedly punching Mr. Terrell and pulling Mrs. Terrell by the hair and placing her in a headlock constituted extreme and outrageous conduct. Further, Mr. and Mrs. Terrell suffered severe emotional distress, as outlined in Section III(E) *supra*.  Defendant Allgrunn's misconduct was so egregious that he knew this type of distress was substantially certain to result.[277]

---

[274] R. Doc. 38-6, DEF 176, Allgrunn Video at 6:01-6:30, 11:31-12:30; R. Doc 38-8, Banta Video at 37:30-38:30; R. Doc. 38-14, Incident Report at p. 4; Ex. A, Angela Terrell Aff. at ¶¶ 10-11; Ex. E, Video Transcript at pp. 9, 16; Ex. F, Allgrunn's Response to Requests for Admission No. 14, 15; Exhibit G, Defendant Richardson's Responses to Request for Admission No. 6-7 at p. 3.

[275] *Thomas v. Gullotta*, 15-cv-00435, R. Doc. 64, *21 (M.D. La, Jan. 26, 2017) (finding that "the alleged facts, if true, are sufficient to support a plausible claim for false imprisonment under Louisiana law" as allegations supported a determination that there was no probable cause to arrest the individual); *Trahan v. City of Scott*, 802 So. 2d 24 (La. App. 3 Cir 03/14/01) (reversing trial court's decision after bench trial and rendered judgment in favor of plaintiff for false imprisonment because officers had "no basis for initially stopping him, they had no authority under the law to demand his identity, search him and handcuff him"). *See also Brown v. City of Monroe*, 135 So. 3d 792, 794 (La. App. 2 Cir 02/26/14).

[276] *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1137 (5th Cir. 2014) (*citing White v. Monsanto*, 585 So. 2d 1205, 1209 (La. 1991)).

[277] *Thomas v. Frederick*, 766 F. Supp. 540, 558 (W.D. La. 1991) (holding that an officer's use of threats, assault and battery and other illegal acts against Plaintiff was "clearly 'outrageous' and was undertaken with

**I.   Defendant Richardson, Allgrunn, Henderson and Banta, in Their Official Capacities, are Liable Under the Doctrine of *Respondeat Superior* for the Tortious Conduct of Defendant Allgrunn.**

"Municipalities do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer."[278] As a result, Defendant Richardson, and all of the Defendants in their official capacities, are liable for Defendant Allgrunn's violations of the Plaintiffs' rights under state law for engaging in false arrest, false imprisonment, assault, battery, as well as negligent and intentional infliction of emotional distress. Louisiana codifies the doctrine of *respondeat superior* as follows: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."[279] "Although an employment relationship may in fact exist, the employer will not be liable for the substandard conduct of the employee unless the latter can be fairly said to be within the course and scope of the employment with the former."[280] "Because of the unlimited contexts in which the issue may arise, we have stated that an employee's conduct is generally within the course and scope of his employment if the conduct is of the character and nature that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer."[281] The Louisiana Supreme Court has distilled this analysis down to several factors to be weighed: "(1) whether the tortious act was primarily employment-rooted; (2) whether the violence was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment."[282]

---

the 'realization to a virtual certainty' that his actions would bring mental anguish to [Plaintiff] and any members of her family who witnessed them.")

[278] *Deville v. Marcantel*, 567 F.3d 156, 174 (5th Cir. 2009).

[279] LA. CIV. CODE ANN. ART. 2320 (1997).

[280] *Brasseaux v. Town of Mamou*, 752 So.2d 815, 820 (La. 2000).

[281] *Id*.

[282] *Miller v. Keating*, 349 So.2d 265, 268 (La. 1977) (applying this formulation).

Here, it is undisputed that these acts occurred in the scope of employment. Defendants admit that Defendants Allgrunn, Banta, and Henderson "act[ed] as DeSoto Parish Deputies and/or Sheriff during any encounter with plaintiffs from August 11 to August 16, 2019."[283]

### J. Defendant Old Republic Union Insurance Company is Liable under Louisiana's Direct Action Statute.

"[A]n injured person, at his or her option, "shall have a right of direct action  against the insurer within the terms and limits of the policy."[284] "The Direct Action Statute affords a victim the right to sue the insurer directly when a liability policy covers a certain risk."[285] In this case, Defendant Old Republic Union Insurance Company has provided insurance coverage for DPSO for "activities while acting as an official, officer, auxiliary officer, employee, temporary worker or volunteer of a law enforcement agency or department of the named insured while performing a law enforcement function."[286]  Mrs. and Mr. Terrell now allege Defendants violated their rights under federal and state law. Therefore, Plaintiff has a right of direct action against Defendant Old Republic Union Insurance Company and is entitled to judgment against them as they are the insurer of Defendant Richardson, as discussed in Sections III(G) *supra*.

### K. Conclusion

For the reasons set forth above, Plaintiffs respectfully requests that this Court grant their Motion for Partial Summary Judgment against Defendants.

Respectfully submitted,

\_\_\_/s/ Casey Denson_____
**Casey Rose Denson (La. Bar #33363)**
**Justine G. Daniel (La. Bar #36856)**
**CASEY DENSON LAW, LLC**

---

[283] Ex. G Richardson's Response to Request for Admission No. 4 at p. 2.
[284] La.R.S.22:1269(B)(1).
[285] *Gorman v. City of Opelousas*, 148 So. 3d 888, 893 (La. 2014) (quotations omitted).
[286] Exhibit HH, DPSO Insurance Policy, at p. 14.

4601 Dryades Street
New Orleans, LA 70115
Phone: (504) 224-0110
Fax: (504) 534-3380
cdenson@caseydensonlaw.com
jdaniel@caseydensonlaw.com


__/s/ Howard Conday _____
**Howard E. Conday (La. Bar #35717)**
**LAW OFFICES OF HOWARD E. CONDAY JR., LLC**
113 South Dr., Suite #4
Natchitoches, LA 71457
Telephone: 318-238-1756
assistant@howardcondaylaw.com


## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2022, a copy of the foregoing Motion for Partial Summary

Judgment was filed electronically with the Clerk of Court via the CM/ECF system. Notice of this

filing will be sent to all counsel of record by operation of the Court's electronic filing system.

_____/s/ Casey Denson_____
CASEY DENSON, ESQ

43